1    **Louis J. Esbin, Esq. (Cal. Bar No. 119705)**
     **LAW OFFICES OF LOUIS J. ESBIN**
2    **25129 The Old Road, Ste. 114**
     **Stevenson Ranch, California 91381**
3    **Tel: 661-254-5050 | Fax: 661-254-5252**
     **Email: Louis@Esbinlaw.com**

4

5    Attorneys for Debtor in Possession, KAI INDUSTRIES, LLC

6

                **UNITED STATES BANKRUPTCY COURT**

7

       **CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

8

9

10    In re                            )     Bankr. Case No. 2:18-bk-11152-SK

                                  )
11    Kai Industries, LLC,          )     Chapter 11

                                  )
12    Debtor in Possession        )     NOTICE OF MOTION AND MOTION

                                  )     FOR (1) AN ORDER AUTHORIZING
13                                  )     DEBTOR IN POSSESSION TO SELL

                                  )     SUBSTANTIALLY ALL OF THE REAL
14                                  )     PROPERTY OF THE ESTATE FREE

                                  )     AND CLEAR OF LIENS, CLAIMS AND
15                                  )     INTERESTS (INCLUDING

                                  )     SUCCESSOR LIABILITY CLAIMS),
16                                  )     WITH LIENS TO ATTACH TO

                                  )     PROCEEDS; (2) A FINDING THAT
17                                  )     THE BUYER IS A GOOD FAITH

                                  )     PURCHASER PURSUANT TO 11
18                                  )     U.S.C. §363(m); (3) A WAIVER OF

                                  )     BANKRUPTCY RULE 6004(h); (4)
19                                  )     OVERBID PROCEDURE; (5) AN

                                  )     ORDER THAT ESCROW HOLD
20                                  )     EXCESS PROCEEDS FROM SALE

                                  )     PENDING FURTHER COURT ORDER;
21                                  )     MEMORANDUM OF POINTS AND

                                  )     AUTHORITIES; DECLARATIONS OF
22                                  )     BRAD LIN AND EMIL

                                  )     KHODORKOVSKY
23                                  )

                                  )     Date:   May 31, 2018
24                                  )     Time:  8:30 a.m.

                                  )     Place:  Courtroom 1575
25                                  )     255 E. Temple Street

                                  )     Los Angeles, CA 90012
26

27

28

                                 - 1 -

TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, PARTIES IN INTEREST AND COUNSEL OF RECORD:

NOTICE IS GIVEN that Debtor and Debtor in Possession Kai Industries, LLC (the "Debtor"), by and through counsel, does respectfully submit for consideration by this Court and parties in interest this  NOTICE OF MOTION AND MOTION FOR (1) AN ORDER AUTHORIZING DEBTOR IN POSSESSION TO SELL SUBSTANTIALLY ALL OF THE REAL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS (INCLUDING SUCCESSOR LIABILITY CLAIMS), WITH LIENS TO ATTACH TO PROCEEDS; (2) A FINDING THAT THE BUYER IS A GOOD FAITH PURCHASER PURSUANT TO 11 U.S.C. §363(m); (3) A WAIVER OF BANKRUPTCY RULE 6004(h); (4) OVERBID PROCEDURE; AND (5) AN ORDER THAT ESCROW HOLD EXCESS PROCEEDS FROM SALE PENDING FURTHER COURT ORDER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF BRAD LIN AND EMIL KHODORKOVSKY, whereby Debtor hereby moves this court for the following orders: (1)  authorizing the Debtor to sell substantially all of the real property of the estate located at 15859-15855-15805-15825 Edna Place, Irwindale, CA 91706 (APN 8417-006-047)  (the "Property") free and clear of liens, claims, and interests (including successor liability claims)("Motion to Sell") to FORBIX Ventures, LLC, a California limited liability company ("FORBIX") for $5,500,000 cash on the terms and conditions set forth in the Commercial Property Purchase Agreement and Joint Escrow Instructions ("APA"), a true and correct copy of which is attached and incorporated by reference as "Exhibit 1;" (2) for a finding that FORBIX is a good faith purchaser pursuant to 11 U.S.C. §363(m); (3) for a waiver of Bankruptcy Rule 6004(h); (4) approving of an overbid procedure; and (5) that Newhall Escrow be authorized to retain the sale proceeds and disburse them subject to further order of the Court.

The relief requested in this Motion to Sell is based upon this Motion to Sell, the Memorandum of Points and Authorities, and the declarations of Brad Lin, on behalf of the Debtor, and Emil Khodorkovsky, on behalf of FORBIX, in support of the Motion to Sell, and is made pursuant to the provisions of 11 U.S.C. §§ 105(a), 363(b)(2), and 363(f) (3) and (4).

NOTICE IS FURTHER GIVEN that in accordance with the Local Rules of this Court, should any party wish to oppose this Motion to Sell, they must do so by written opposition filed and served upon counsel for Debtors not less than fourteen (14) days from the date of notice of this Motion and request that a hearing be set, the failure to do so timely being deemed a waiver of any opposition which may have been made, resulting in a declaration of nonopposition to be filed and entry of an order granting the within Motion to Sell.

**WHEREFORE**, the Debtor prays for an order of the Court as follows:

1.    Authorizing the Debtor to sell the Property to FORBIX upon the terms and conditions set forth in Exhibit 1 to this Motion to Sell, unless higher and better bids are received and accepted by Debtor and approved by the Court at the time of the hearing on this Motion to Sell.

2.    Ordering that the sale be free and clear of liens, claims and interests (including successor liability claims), with the liens of the County of Los Angeles for real property taxes due for April 10 and June 30, 2018, JFL Construction Technology Inc. on its deed of trust dated October 13, 2013, and recorded October 25, 2016, as Instrument No. 20161313718, Juva Investments, LLC, on its deed of trust dated November 25, 2016, and recorded December 27, 2016, as Instrument No. 20161644677, to attach to the proceeds of sale.

3.    For a finding that FORBIX is a good faith purchaser entitled to all the protections and benefits of 11 U.S.C. § 363(m).

///

///

- 3 -

4.      For an order approving of an overbid procedure.

5.      For an order authorizing Newhall Escrow to retain the sale proceeds and disburse them subject to further order of the Court.

6.      For such other and further relief as the court deems just and proper.


Dated: May 8, 2018                          LAW OFFICES OF LOUIS J. ESBIN

                                            /s/ Louis J. Esbin
                                            _____
                                            LOUIS J. ESBIN ESQ,
                                            Attorneys for Debtor

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    FACTS**

    **A.    The Filing of This Bankruptcy Case**

On February 1, 2018, Kai Industries, LLC, filed a voluntary petition under Chapter 11, Title 11 United States Code, commencing Case No. 2:18-bk-11152-SK ("Case"), in which Kai Industries, LLC, has been operating as a Debtor and Debtor in Possession under 11 U.S.C. §§1107 and 1108.

During the course of the Case, Debtor has been successful in having two motions to have a trustee appointed ("<u>Trustee Motions</u>") dismissed, which Trustee Motions were filed by Sam S. Leslie ("<u>Leslie</u>"), as the Chapter 7 Trustee for in the case of <u>In re Vannesa Ly</u>, Bankr. Case No. 2:16-bk-22420-SK ("<u>Ly Case</u>"). Leslie is an unmatured, unliquidated, contingent, and disputed creditor of the Debtor arising from allegations made against the Debtor and its member, Brad Lin, arising in an adversary proceeding commenced by Leslie in the Ly Case.  Leslie's claim, if any, against the Debtor and its estate has not been filed and is not currently ascertainable.

Debtor is in compliance, in all respects, with the requirements of the United States Trustee, having filed each of its monthly operating reports for February and March, with the April monthly operating report due by May 15, 2018.

    **B.    The Debtor's Business Operations and its Business Premises**

When it filed its bankruptcy case, the Debtor was the owner of the real property located 15859-15855-15805-15825 Edna Place, Irwindale, CA 91706 (APN 8417-006-047) (the "<u>Property</u>") from which Property Debtor was renting space to tenants, substantially doing business in the auto retail market, from which rent was collected and deposited in the debtor in possession cash collateral account.

According to an April 10, 2018, preliminary title report (attached and incorporated by reference as "<u>Exhibit 2</u>"), the Real Property is encumbered with the following: the liens of the County of Los Angeles for real property taxes due for April 10 ($14,647.82 and $1,474.78 in late penalties), June 30, 2018 ($14,647.82), and 2016-

2017 ($17,971.73) JFL Construction Technology Inc. on its deed of trust dated October 13, 2013, and recorded October 25, 2016, as Instrument No. 20161313718, that is intended to secure an original obligation of $3,700,000, Juva Investments, LLC, on its deed of trust dated November 25, 2016, and recorded December 27, 2016, as Instrument No. 20161644677, that is intended to secure an original obligation of $600,000. Each of these encumbrances will attach to the sale proceeds in the same order and priority as is found in the records of the Los Angeles County Recorder's Office and will be paid by Newhall Escrow upon order of the Court.

**C.    JFL Construction Technology, Inc.'s Motion to Determine Debtor a Single Asset Debtor.**

There is pending for hearing on May 16, 2018, the motion by JFL Construction Technology, Inc., to determine Debtor to be a Single Asset Property Debtor and have the Case administered as one. Debtor is selling the Property in furtherance of its effective reorganization and will have funds disbursed under further order of the Court.

Debtor and JFL have not reached an agreement on the use of Cash Collateral, as JFL insists on adequate protection payments equal to the contractually due amount, notwithstanding that JFL has been adequately protected by an adequate equity cushion over an above the amount of its outstanding balance. As a result, all rent collected during the course of the Case has been segregated in the Debtor in Possession Cash Collateral Account. Any rent collected prior to the commencement of the Case was originally deposited into the prepetition accounts that were closed and those prepetition proceeds from rent deposited into the Debtor in Possession Operating Account, from which Debtor has been paying for the operation of the Real Property; although with the lack of a Cash Collateral Stipulation, in order to preserve the Real Property and to acquire insurance, Debtor obtained funds from its principal and third parties, which advances Debtor will seek reimbursement from Escrow.

///

///

- 6 -

1

### D.    The Sale Negotiations and the Proposed Sale

Prior to execution of the APA, Debtor engaged in negotiations with two other prospective purchasers of the Property.  One prospective buyer would only entertain an offer of no more than $4.8 million.  The second prospective buyer had offered a purchase price of $5.4 million; however, there was a financing contingency under which the prospective buyer's lender was not willing to fund more than $4.4 million, leaving the prospective buyer to fund the remaining balance of $1.1 million; a contingency they were not willing to satisfy.

FORBIX was the strongest prospective buyer of the three prospective buyers, agreeing that Debtor will receive the net amount of $5.3 million from the $5.4 purchase price, showing evidence, as well, that it had the funds necessary to close, notwithstanding the finance contingency, as well with a commitment from FORBIX Capital to make FORBIX the loan of $4.5 million to satisfy the finance contingency and close escrow immediately upon entry of the order approving of this Motion to Sell.  A true and correct copy of the its proof of funds and ability to close are attached and incorporated by reference as "Exhibit 3."

### E.    Liens on the Property

According to an April 10, 2018, preliminary title report (Exhibit 2), the Real Property is encumbered with the following: the liens of the County of Los Angeles for real property taxes due for April 10 ($14,647.82 and $1,474.78 in late penalties), June 30, 2018 ($14,647.82), and 2016-2017 ($17,971.73) JFL Construction Technology Inc. ("JFL") on its deed of trust dated October 13, 2013, and recorded October 25, 2016, as Instrument No. 20161313718, that is intended to secure an original obligation of $3,700,000, Juva Investments, LLC ("Juva"), on its deed of trust dated November 25, 2016, and recorded December 27, 2016, as Instrument No. 20161644677, that is intended to secure an original obligation of $600,000.

///

///

**F.      Proposed Payment of Liens and Other Claims Against the Estate**

Each of these encumbrances will attach to the sale proceeds in the same order and priority as is found in the records of the Los Angeles County Recorder's Office and will be paid by Newhall Escrow upon order of the Court.

There is a May 13, 2018, claims bar date in the Case by which any and all parties, parties in interest or interested parties must file a claim against the Estate. As of the date of this Motion to Sell, there are three filed claims: Claim No. 1 - Los Angeles County Treasurer and Tax Collector in the amount of $80,116.09 (an amount that must be reconciled against the Preliminary Title Report); Claim No. 2 - Internal Revenue Service ("IRS") in the amount of $24,355.03 (unsecured) and $1,157.45 (priority) (amounts that must be reconciled against whether the limited liability company members have treated the Debtor as a partnership or as a corporation for purposes of tax treatment); and Claim No. 3 - California Franchise Tax Board ("FTB") in the amount of $6,286.89, of which $5,191.63 is claimed as priority (amounts that must be reconciled against whether the limited liability company members have treated the Debtor as a partnership or as a corporation for purposes of tax treatment). In addition, based upon the purchase price at the time Debtor acquired the Property (basis), plus any capital improvements made to the Property, plus the recapture of any depreciation (adjusted basis), Debtor may be liable for capital gains taxes, which amount will need to be calculated, consented to by the IRS and FTB, and paid through Escrow.

**G.      Proposed Overbid Procedures**

The proposed sale of the Property is subject to higher and better offers being received and accepted by the Debtor prior to the scheduled hearing on this motion. Any party wishing to overbid shall deposit a cashier's check for $165,000 made payable to "Kai Industries, LLC, Debtor and Debtor in Possession" with Newhall Escrow, no later than 5:00 p.m. PST on May 29, 2018. Moreover, any party wishing to overbid also shall provide the Debtor with sufficient evidence to establish that it will be

able to close if it is the successful bidder and its bid is approved by the Court. The initial minimum overbid will be $100,000 (i.e., to be a qualified overbid, the initial overbid must be at least $150,000). Subsequent overbids will be in minimum increments of $100,000. All other terms of the sale shall be upon the same terms and conditions as the proposed sale to FORBIX, described in Exhibit 1.

If one or more qualified overbids are received by 5:00 p.m. PST May 29, 2018, an auction of the Property shall be held in Courtroom 1575 of the United States Courthouse, 255 E. Temple Street, Los Angeles, California at 8:30 p.m. PST on the date that is scheduled for the hearing on approval of this Motion to Sell. At the conclusion of the auction, the Debtor will ask the court to confirm the results of the auction and to approve the sale of the Property to the highest bidder.

The successful bidder at the auction shall close upon the opened escrow with Newhall Escrow, within three business days following the hearing on this Motion to Sell and the approval of this Motion to Sell by the Court. The cashier's check referenced above shall be forfeited by the successful bidder if escrow has not closed as set forth above through no fault of the Debtor. Moreover, in the event of forfeiture or an inability to close by the successful bidder, the Debtor shall be entitled to sell the Property to the next highest bidder at the auction, without further notice or order of the Court, provided such sale (other than the purchase price) is upon the same terms and conditions as the proposed sale to FORBIX, as set forth in Exhibit 1 to this Motion to Sell.

### H.    Agreement with JFL and Juva

Debtor sought the cooperation and agreement from JFL for the Motion to Sell; however, by the date of this Motion to Sell, no response was received. Debtor sought and obtained the consent and cooperation of Juva to the Motion to Sell.

///

///

///

## II. ARGUMENT

### A. The Court Should Approve the Sale Because It Is In The Best Interests Of The Bankruptcy Estate

11 U.S.C. §363(b)(1) authorizes a debtor-in-possession to sell property when such sale is in the best interest of the estate.  A sale under section 363(b)(1) should be approved if the debtor-in-possession has established a sound business purpose for the transaction.  See, *In re Walter*, 83 B.R. 14, 16 (9th Cir. BAP 1988);  *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830 (Bankr. C.D. Cal. 1991).

The proposed sale of the Property is in the estate's best interest.  This estate is receiving net sale proceeds (after costs of sale that are capped for the Debtor at $100,000) $5.3 million from FORBIX, a price that was reached after arms-length negotiations with FORBIX and after another potential buyer was unable to obtain financing at an amount affordable for them to purchase the Property.  FORBIX will not be occupying any space at the Property.  The Debtor also has a sound business reason for the proposed sale: JFL is aggressively pursuing its Bankruptcy Code remedies, has not been cooperative in entering into a cash collateral agreement, the Leslie continues his threat to seek appointment of a trustee; notwithstanding having been defeated twice before.  Moreover, given that the JFL loan matures on its own terms in October 2018, and given JFL's reluctance to be cooperative, it is best that while the real estate market is appreciating and FORBIX is a ready and willing buyer, that the Property should be sold.

### B. The Property Can Be Sold Free and Clear of Liens, Claims and Interests (Including Successor Liability Claims).

There are several statutory grounds authorizing this court to approve the sale of the Property to FORBIX free and clear of the Los Angeles County, JFL and Juva liens. Since receipt of net sale proceeds of $5.3 million from the $5.4 purchase price is greater than the liens of the County of Los Angeles for real property taxes due for April 10 ($14,647.82 and $1,474.78 in late penalties), June 30, 2018 ($14,647.82), and

2016-2017 ($17,971.73) JFL Construction Technology Inc. ("JFL") on its deed of trust dated October 13, 2013, and recorded October 25, 2016, as Instrument No. 20161313718, that is intended to secure an original obligation of $3,700,000, Juva Investments, LLC ("Juva"), on its deed of trust dated November 25, 2016, and recorded December 27, 2016, as Instrument No. 20161644677, that is intended to secure an original obligation of $600,000, and even greater than the IRS and FTB Claims filed in the Case.  See *In re PW, LLC*, 391 B.R. 25, 39-40 (9th Cir. BAP. 2008).

There is no evidence that the IRS or the FTB or anyone else has filed a lien against the Property.  In fact, the IRS and FTB Claims are admissions that they hold only an unsecured priority claim against the estate, but not a secured claim against property of the estate. So, if one were asserted it would be subject to a bona fide dispute pursuant to 11 U.S.C. § 363(f)(4).

Section 363(f) also permits this court to authorize the sale of property free and clear of an "interest."  Although the term "interest" isn't defined in the Bankruptcy Code, and while there is a minority view, most courts have held that an "interest" not only includes an *in rem* interest, but also other obligations that might flow from the ownership of a debtor's former property, like successor liability claims.  See *Indiana State Police Pension Trust v. Chrysler LLC (In re Chrysler LLC)*, 576 F.3d 108, 126 (2d Cir.), cert. granted and judgment vacated on other grounds, 558 U.S. 1087 (2009)(section 363(f) authorized sale of assets free and clear of products liability claims);  *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 582 (4th Cir.1996) (holding that debtor coal mine operators could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute);  *In re R Star Restaurants, Inc.*, 2010 WL 3329814, at *4  *In re PBBPC, Inc.*, 484 B.R. 860, 867 (1st Cir. BAP 2013)(citing cases).

### C.    FORBIX is a Good Faith Purchaser per 11 U.S.C. § 363(m).

"Though the Bankruptcy Code and Rules do not provide a definition of good faith, courts generally have followed traditional equitable principles in holding that a

good faith purchaser is one who buys 'in good faith' and 'for value.'" *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (citing, *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3rd Cir. 1986). Lack of good faith may be shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (quoting *In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985)); see also *In re R Star Restaurants, Inc.*, 2010 WL 3329814, at *2 (finding good faith where " (i) Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Acquired Assets; (ii) all payments to be made by Purchaser in connection with the sale have been disclosed; (iii) Purchaser has not violated Section 363(n) of the Bankruptcy Code by any action or inaction, and its affiliation with insiders of the Debtor and related agreements with such insiders have been disclosed; and (iv) the negotiation and execution of the Agreement and any other agreements or instruments related thereto was without collusion, at arm's-length, and in good faith."); *In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987) (good faith requirement "focuses principally on the element of special treatment of the debtor's insiders in the sale transaction").

In this case, the proposed sale is not predicated on fraud or collusion, and the sale is not to an insider, nor have any insiders received any special treatment or consideration. Furthermore, the Debtor has submitted testimony from the FORBIX principal, Emil Khodorkovsky, demonstrating that the proposed sale has been entered into on an arms-length basis after vigorous negotiations and establishing there is no connection or relation between FORBIX and the Debtor. This satisfies section 363(m).

With the execution of the declaration of Emil Khodorkovsky in support of the Motion to Sell FORBIX will be depositing with Newhall Escrow, into Escrow No. 91985, the sum of $165,000, as the good faith earnest money deposit. Upon close of the Escrow, FORBIX will contribute an additional $835,000, which with the funding from Forbix Capital Corporation of $4.5 million, will provide the purchase price of $5.5

million, of which after payment of a 2% commission to the Realtor and closing costs, it is agreed that Debtor will receive net sale proceeds of not less than $5.3 million. FORBIX will be funding substantially all of the costs of sale set forth on the Addendum to the APA.  Proof of FORBIX ability to fund the remaining balance of the purchase price of $4.5 million is attached and incorporated by reference as "Exhibit 3."

D.      **There is Good Cause for Newhall Escrow to be the Holder of the Debtor's Net Sale Proceeds.**

The Debtor has occupied and conducted its business on the Property since the petition date.  Also, by continuing to operate on its business on the Property, the Debtor has been able to preserve the value of the Property, as a low cost rental business model, where few tenants actually occupy their spaces, thereby not requiring the level of maintenance otherwise found in other commercial buildings.  Debtor has filed each of its monthly operating reports. Notwithstanding, Leslie, through his counsel, is gunning for the net sale proceeds for use to pay Leslie's administrative expenses in the Ly Case. Debtor gave notice of the claims bar date to those who Leslie alleges owe the Debtor money, which is the reason for trying to seize the net sale proceeds. In order to quell the unearned concerns over the Debtor's management of such proceeds, it is the desire of the Debtor that Newhall Escrow continue to hold the net sale proceeds after satisfaction of the liens. Once the issue of allowed claims has been resolved, upon further order of the Court, Newhall Escrow can be instructed to disburse funds to those entitled to receive funds, including Brad Lin, as a limited liability distribution, if he so chooses.

**WHEREFORE**, the Debtor prays for an order of the Court as follows:

1.      Authorizing the Debtor to sell the Property to FORBIX upon the terms and conditions set forth in Exhibit 1 to this Motion to Sell, unless higher and better bids are received and accepted by Debtor and approved by the Court at the time of the hearing on this Motion to Sell.

- 13 -

2.     Ordering that the sale be free and clear of liens, claims and interests (including successor liability claims), with the liens of the County of Los Angeles for real property taxes due for April 10 and June 30, 2018, JFL Construction Technology Inc. on its deed of trust dated October 13, 2013, and recorded October 25, 2016, as Instrument No. 20161313718, Juva Investments, LLC, on its deed of trust dated November 25, 2016, and recorded December 27, 2016, as Instrument No. 20161644677, to attach to the proceeds of sale.

3.     For a finding that FORBIX is a good faith purchaser entitled to all the protections and benefits of 11 U.S.C. § 363(m).

4.     For an order approving of an overbid procedure.

5.     For an order authorizing Newhall Escrow to retain the sale proceeds and disburse them subject to further order of the Court.

6.     For such other and further relief as the court deems just and proper.

Dated: May 8, 2018                          LAW OFFICES OF LOUIS J. ESBIN

                                            /s/ Louis J. Esbin
                                            _____
                                            LOUIS J. ESBIN ESQ,
                                            Attorneys for Debtor

## <u>DECLARATION OF BRAD LIN</u>

I, BRAD LIN, declares and state as follows:

1.      I am the managing member of the Debtor and Debtor in Possession Kai Industries, LLC (the "Debtor"), in which capacity I caused to be filed a voluntary petition under Chapter 11, Title 11 United States Code, in order to commence the within Chapter 11 Case and to enjoin the efforts of Leslie to seize the property of the estate located at 15859-15855-15805-15825 Edna Place, Irwindale, CA 91706 (APN 8417-006-047) (the "<u>Property</u>"), I am knowledgeable about the business of the Debtor and upon review of the books and records of the Debtor that are maintained by our bookkeeper and by Vannesa Ly, I am knowledgeable about the financial affairs of the Debtor, including, without limitations, the events described in this declaration and in the Motion to Sell concerning the Property, in which capacity, if called to testify, I would and could competently and truthfully concerning the matters of which this Motion to Sell are based.

2.      On February 1, 2018, Kai Industries, LLC, filed a voluntary petition under Chapter 11, Title 11 United States Code, commencing Case No. 2:18-bk-11152-SK ("Case"), in which Kai Industries, LLC, has been operating as a Debtor and Debtor in Possession under 11 U.S.C. §§1107 and 1108.

3.      During the course of the Case, Debtor has been successful in having two motions to have a trustee appointed ("<u>Trustee Motions</u>") dismissed, which Trustee Motions were filed by Sam S. Leslie ("<u>Leslie</u>"), as the Chapter 7 Trustee for in the case of <u>In re Vannesa Ly</u>, Bankr. Case No. 2:16-bk-22420-SK ("<u>Ly Case</u>"). Leslie is an unmatured, unliquidated, contingent, and disputed creditor of the Debtor arising from allegations made against the Debtor and its member, Brad Lin, arising in an adversary proceeding commenced by Leslie in the Ly Case.  Leslie's claim, if any, against the Debtor and its estate has not been filed and is not currently ascertainable.

**4.**    Debtor is in compliance, in all respects, with the requirements of the United States Trustee, having filed each of its monthly operating reports for February and March, with the April monthly operating report due by May 15, 2018.

5.    When it filed its bankruptcy case, the Debtor was the owner of the real property located 15859-15855-15805-15825 Edna Place, Irwindale, CA 91706 (APN 8417-006-047) (the "Property") from which Property Debtor was renting space to tenants, substantially doing business in the auto retail market, from which rent was collected and deposited in the debtor in possession cash collateral account.

6.    As the managing member of the Debtor, I believe that it is in the best interest of the Debtor and the Bankruptcy Estate that the Court authorize the Debtor to sell substantially all of the real property of the estate located at 15859-15855-15805-15825 Edna Place, Irwindale, CA 91706 (APN 8417-006-047) free and clear of liens, claims, and interests (including successor liability claims)("Motion to Sell") to FORBIX Ventures, LLC, a California limited liability company ("FORBIX") for $5,500,000 cash on the terms and conditions set forth in the Commercial Property Purchase Agreement and Joint Escrow Instructions ("APA"), a true and correct copy of which is attached and incorporated by reference as "Exhibit 1."

7.    Upon receipt of the fully executed APA, the APA was delivered to Newhall Escrow located at 24010 Lyons Avenue, Newhall, CA 91321, upon which there was opened Escrow No. 91985.  Chelsea Corn has been assigned as the escrow officer on the file and has already begun processing the documentation necessary to close escrow upon entry of a court order granting the Motion to Sell.

8.    According to an April 10, 2018, preliminary title report (attached and incorporated by reference as "Exhibit 2") obtained through Newhall Escrow and WFG National Title Company (Order No. 18-170829), the Real Property is encumbered with the following: the liens of the County of Los Angeles for real property taxes due for April 10 ($14,647.82 and $1,474.78 in late penalties), June 30, 2018 ($14,647.82), and 2016-2017 ($17,971.73) JFL Construction Technology Inc. on its deed of trust dated

October 13, 2013, and recorded October 25, 2016, as Instrument No. 20161313718, that is intended to secure an original obligation of $3,700,000, Juva Investments, LLC, on its deed of trust dated November 25, 2016, and recorded December 27, 2016, as Instrument No. 20161644677, that is intended to secure an original obligation of $600,000.  Each of these encumbrances will attach to the sale proceeds in the same order and priority as is found in the records of the Los Angeles County Recorder's Office and will be paid by Newhall Escrow upon order of the Court.

9.     There is pending for hearing on May 16, 2018, the motion by JFL Construction Technology, Inc., to determine Debtor to be a Single Asset Property Debtor and have the Case administered as one. Debtor is selling the Property in furtherance of its effective reorganization and will have funds disbursed under further order of the Court.

10.     Debtor and JFL have not reached an agreement on the use of Cash Collateral, as JFL insists on adequate protection payments equal to the contractually due amount, notwithstanding that JFL has been adequately protected by an adequate equity cushion over and above the amount of its outstanding balance.  As a result, all rent collected during the course of the Case has been segregated in the Debtor in Possession Cash Collateral Account.  Any rent collected prior to the commencement of the Case was originally deposited into the prepetition accounts that were closed and those prepetition proceeds from rent deposited into the Debtor in Possession Operating Account, from which Debtor has been paying for the operation of the Real Property; although with the lack of a Cash Collateral Stipulation, in order to preserve the Real Property and to acquire insurance, Debtor obtained funds from its principal and third parties, which advances Debtor will seek reimbursement from Escrow.

11.     Prior to execution of the APA, Debtor engaged in negotiations with two other prospective purchasers of the Property.  One prospective buyer would only entertain an offer of no more than $4.8 million.  The second prospective buyer had offered a purchase price of $5.4 million; however, there was a financing contingency under which the prospective buyer's lender was not willing to fund more than $4.4 million,

leaving the prospective buyer to fund the remaining balance of $1.1 million; a contingency they were not willing to satisfy.

12.    FORBIX was the strongest prospective buyer of the three prospective buyers, agreeing that Debtor will receive the net amount of $5.3 million from the $5.4 purchase price, showing evidence, as well, that it had the funds necessary to close, notwithstanding the finance contingency, as well with a commitment from FORBIX Capital to make FORBIX the loan of $4.5 million to satisfy the finance contingency and close escrow immediately upon entry of the order approving of this Motion to Sell.

13.    According to an April 10, 2018, preliminary title report (Exhibit 2), the Real Property is encumbered with the following: the liens of the County of Los Angeles for real property taxes due for April 10 ($14,647.82 and $1,474.78 in late penalties), June 30, 2018 ($14,647.82), and 2016-2017 ($17,971.73) JFL Construction Technology Inc. ("JFL") on its deed of trust dated October 13, 2013, and recorded October 25, 2016, as Instrument No. 20161313718, that is intended to secure an original obligation of $3,700,000, Juva Investments, LLC ("Juva"), on its deed of trust dated November 25, 2016, and recorded December 27, 2016, as Instrument No. 20161644677, that is intended to secure an original obligation of $600,000.

14.    Each of these encumbrances will attach to the sale proceeds in the same order and priority as is found in the records of the Los Angeles County Recorder's Office and will be paid by Newhall Escrow upon order of the Court.

15.    There is a May 13, 2018, claims bar date in the Case by which any and all parties, parties in interest or interested parties must file a claim against the Estate.  As of the date of this Motion to Sell, there are three filed claims: Claim No. 1 - Los Angeles County Treasurer and Tax Collector in the amount of $80,116.09 (an amount that must be reconciled against the Preliminary Title Report); Claim No. 2 - Internal Revenue Service ("IRS") in the amount of $24,355.03 (unsecured) and $1,157.45 (priority) (amounts that must be reconciled against whether the limited liability company members have treated the Debtor as a partnership or as a corporation for

purposes of tax treatment); and Claim No. 3 - California Franchise Tax Board ("FTB") in the amount of $6,286.89, of which $5,191.63 is claimed as priority (amounts that must be reconciled against whether the limited liability company members have treated the Debtor as a partnership or as a corporation for purposes of tax treatment). In addition, based upon the purchase price at the time Debtor acquired the Property (basis), plus any capital improvements made to the Property, plus the recapture of any depreciation (adjusted basis), Debtor may be liable for capital gains taxes, which amount will need to be calculated, consented to by the IRS and FTB, and paid through Escrow.

16.    The proposed sale of the Property is in the estate's best interest.  This estate is receiving net sale proceeds (after costs of sale that are capped for the Debtor at $100,000) $5.3 million from FORBIX, a price that was reached after arms-length negotiations with FORBIX and after another potential buyer was unable to obtain financing at an amount affordable for them to purchase the Property.  FORBIX will not be occupying space at the Property.  The Debtor also has a sound business reason for the proposed sale: JFL is aggressively pursuing its Bankruptcy Code remedies, has not been cooperative in entering into a cash collateral agreement, the Leslie continues his threat to seek appointment of a trustee; notwithstanding having been defeated twice before.  Moreover, given that the JFL loan matures on its own terms in October 2018, and given JFL's reluctance to be cooperative, it is best that while the real estate market is appreciating and FORBIX is a ready and willing buyer, that the Property should be sold.

17.    Receipt of net sale proceeds of $5.3 million from the $5.4 purchase price is greater than the liens of the County of Los Angeles for real property taxes due for April 10 ($14,647.82 and $1,474.78 in late penalties), June 30, 2018 ($14,647.82), and 2016-2017 ($17,971.73) JFL Construction Technology Inc. ("JFL") on its deed of trust dated October 13, 2013, and recorded October 25, 2016, as Instrument No. 20161313718, that is intended to secure an original obligation of $3,700,000, Juva

Investments, LLC ("Juva"), on its deed of trust dated November 25, 2016, and recorded December 27, 2016, as Instrument No. 20161644677, that is intended to secure an original obligation of $600,000, and even greater than the IRS and FTB Claims filed in the Case.

18.    In this case, the proposed sale is not predicated on fraud or collusion, and the sale is not to an insider, nor have any insiders received any special treatment or consideration. Furthermore, the Debtor has submitted testimony from the FORBIX principal, Emil Khodorkovsky, demonstrating that the proposed sale has been entered into on an arms-length basis after vigorous negotiations and establishing there is no connection or relation between FORBIX and the Debtor.

19.    The Debtor has occupied and conducted its business on the Property since the petition date.  Also, by continuing to operate on its business on the Property, the Debtor has been able to preserve the value of the Property, as a low-cost rental business model, where few tenants actually occupy their spaces, thereby not requiring the level of maintenance otherwise found in other commercial buildings.  Debtor has filed each of its monthly operating reports. Notwithstanding, Leslie, through his counsel, is gunning for the net sale proceeds for use to pay Leslie's administrative expenses in the Ly Case. Debtor gave notice of the claims bar date to those who Leslie alleges owe the Debtor money, which is the reason for trying to seize the net sale proceeds. In order to quell the unearned concerns over the Debtor's management of such proceeds, it is the desire of the Debtor that Newhall Escrow continue to hold the net sale proceeds after satisfaction of the liens. Once the issue of allowed claims has been resolved, upon further order of the Court, Newhall Escrow can be instructed to disburse funds to those entitled to receive funds, including Brad Lin, as a limited liability distribution, if he so chooses.

///

1      I declare under penalty of perjury under the laws of the state of California and of

2    the United States that the foregoing is true and correct and, if called to testify, I would

3    competently and honestly.

4

5    Executed this 8th day of May 2018, in Irwindale, California.

6

7                      /s/ Brad Lin

8                      Brad Lin, declarant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF EMIL KHODORKOVSKY

I, EMIL KHODORKOVSKY, declare and state as follows:

1.      I am the managing member of Forbix Ventures LLC, a California limited liability company ("<u>FORBIX</u>"), as well, I am the Chief Executive Officer of Forbix Capital Corporation, a California corporation, and in that capacity, except as so stated, I have the personal knowledge to make the following statements, such that if called to testify I could and would honestly and truthfully.

2.      FORBIX was first incorporated through the California Secretary of State on September 3, 2014, as No. 201424810013, and has continuously been in good standing as a California limited liability company since that date, having filed its Statements of Information as recently due on December 20, 2016.  FORBIX is located at 24654 Cordillera Drive, Calabasas, CA 91302.

3.      Forbix Capital Corporation was first incorporated through the California Secretary of State on March 9, 2011, as No. 3365139, and has continuously been in good standing as a California corporation since that date, having filed its Statements of Information as recently due on April 30, 2018.  Forbix Capital Corporation is located at 15260 Ventura Blvd., Suite 700, Sherman Oaks, CA 91403.

4.      FORBIX intends to purchase the real property located at located at 15859-15855-15805-15825 Edna Place, Irwindale, CA 91706 (APN 8417-006-047) free and clear of liens, claims, and interests (including successor liability claims) for the purchase price of $5,500,000 cash on the terms and conditions set forth in the Commercial Property Purchase Agreement and Joint Escrow Instructions ("APA"), a true and correct copy of which is attached and incorporated by reference as "<u>Exhibit 1</u>," which in my capacity as the managing member I executed on April 20, 2018, and on April 26, 2018, the Addendum attached thereto.

5.      FORBIX has no existing or pre-existing relationship with the Debtor, Brad Lin, or anyone related to Debtor or Brad Lin.

- 22 -

6.     FORBIX was introduced to the Property by Christina Ceniza of Bright Homes Realty, who has agreed to a 2% commission of $110,000, paid upon closing of Escrow.

7.     FORBIX does not intend to occupy the Property or conduct business from the Property but, rather, FORBIX finds the Property as an attractive investment.  It is my understanding and agree that the purchase of the Property is "where is" and "as is."

8.     FORBIX is related to Forbix Capital Corporation, the entity that will be providing the balance of the financing to purchase the Property in an amount of $4.5 million.  I am the Chief Executive Officer of Forbix Capital Corporation, which does business from 15260 Ventura Blvd., Suite 700, Sherman Oaks, California 91403.

9.     With my execution of this Declaration in support of the Motion to Sell I will be depositing with Newhall Escrow, into Escrow No. 91985, the sum of $165,000, as the good faith earnest money deposit.  Upon close of the Escrow, FORBIX will contribute an additional $835,000, which with the funding from Forbix Capital Corporation of $4.5 million, will provide the purchase price of $5.5 million, of which after payment of a 2% commission to the Realtor and closing costs, it is agreed that Debtor will receive net sale proceeds of not less than $5.3 million. FORBIX will be funding substantially all of the costs of sale set forth on the Addendum to the APA.  Proof of FORBIX ability to fund the remaining balance of the purchase price of $4.5 million is attached and incorporated by reference as "Exhibit 3."

///
///
///
///
///
///
///
///

- 23 -

1         I declare under penalty of perjury under the laws of the state of California and of

2    the United States that the foregoing is true and correct and, if called to testify, I would

3    competently and honestly.

4

5    Executed this 9th day of May 2018, in Calabasas, California.

6                               /s/ Emil Khodorkovsky

7                               Emil Khodorkovsky, declarant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "1"**

DocuSign Envelope ID: F3F5FF85-98F4-451B-9193-094C1C4BE684



**COMMERCIAL PROPERTY PURCHASE AGREEMENT**
**AND JOINT ESCROW INSTRUCTIONS**
(NON-RESIDENTIAL)
(C.A.R. Form CPA, Revised 12/15)

CALIFORNIA
ASSOCIATION
OF REALTORS®

**Date Prepared:** _04/20/2018_

**1. OFFER:**

**A. THIS IS AN OFFER FROM** _FORBIX VENTURES, LLC , signor Emil Khodorkovsky_ ("Buyer").
☐ Individual(s), ☒ A Corporation, ☐ A Partnership, ☐ An LLC, ☐ An LLP, or ☐ Other

**B. THE REAL PROPERTY** to be acquired is _15805-15859 EDNA PLACE_, situated in
_IRWINDALE_ (City), _LOS ANGELES_ (County), California, _91706_ (Zip Code), Assessor's Parcel No. _8417-006-047_ ("Property").

**C. THE PURCHASE PRICE** offered is _Five Million, Five Hundred Thousand_
Dollars $ _5,500,000.00_

**D. CLOSE OF ESCROW** shall occur on ☐ _____ (date) (or ☒ _n/a_ Days After Acceptance).

**E.** Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

**2. AGENCY:**

**A. DISCLOSURE:** The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD)

**B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
Listing Agent _BRIGHT HOMES REALTY_ (Print Firm Name) is the agent of (check one):
☐ the Seller exclusively; or ☒ both the Buyer and Seller.
Selling Agent _BRIGHT HOMES REALTY_ (Print Firm Name) (if not the same
as the Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.

**C. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. FINANCE TERMS:** Buyer represents that funds to be good when deposited with Escrow Holder.

**A. INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _165,000.00_
(1) **Buyer Direct Deposit:** Buyer shall deliver deposit directly to Escrow Holder by electronic funds
transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days
after Acceptance (or _____ );
**OR (2)** ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ )
to the agent submitting the offer (or to _____ ), made payable to
_____ . The deposit shall be held uncashed until Acceptance and then deposited
with Escrow Holder within 3 business days after Acceptance (or _____ ).
Deposit checks given to agent shall be an original signed check and not a copy.
(Note: Initial and increased deposit checks received by agent shall be recorded in Broker's trust fund log.)

**B. INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . $ _____
within _____ Days After Acceptance (or _____ ).
If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
RID) at the time the increased deposit is delivered to Escrow Holder.

**C.** ☐ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer
or ☐ Buyer shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller such verification.

**D. LOAN(S):**
(1) **FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _4,500,000.00_
This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed
financing (C.A.R. Form AFA), ☐ subject to financing, ☐ Other _____ . This
loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not
to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of
the loan amount.
(2) ☐ **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing
(C.A.R. Form AFA), ☐ subject to financing, ☐ Other _____ . This loan shall be at a fixed
rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.

**E. ADDITIONAL FINANCING TERMS:** _FORBIX CAPITAL CORP. LLC. IS THE LENDER . Please see_
_addendum  on the agreement on the close of escrow._

**F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . $ _835,000.00_
to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

**G. PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _5,500,000.00_

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1))
shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs.
(☐ Verification attached.)

Buyer's Initials ( _____ ) ( _____ )          Seller's Initials ( _BL_ ) ( _____ )

© 2015, California Association of REALTORS®, Inc.
**CPA REVISED 12/15 (PAGE 1 OF 11)**

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 1 OF 11)**

DocuSign Envelope ID: F3F5FF85-98F4-451B-9193-0940701AB2564

Property Address: _15805-15859 EDNA PLACE, IRWINDALE,  91706_                              Date: _April 20, 2018_

**I.**   **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 18B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or _____ ) Days After Acceptance.

**J.**   **LOAN TERMS:**

   **(1) LOAN APPLICATIONS:** Within 3 (or _____ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

   **(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above is a **contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs are **not contingencies** of this Agreement.

   **(3) LOAN CONTINGENCY REMOVAL:**

   Within 21 (or _____ ) Days After Acceptance, Buyer shall, as specified in paragraph 18, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

   **(4) ☒ NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

   **(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K.**   **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4.**   **SALE OF BUYER'S PROPERTY:**

   **A.**   This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

   **OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5.**   **ADDENDA AND ADVISORIES:**

   **A.**   ADDENDA:

| | |
|---|---|
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Addendum #_____    (C.A.R. Form ADM) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R.  Form SWPI) | ☒ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

   **B.**   BUYER AND SELLER ADVISORIES:

| | |
|---|---|
| ☐ Probate Advisory (C.A.R. Form PA) | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ REO Advisory (C.A.R. Form REO) |
| | ☐ Other |

**6.**   **OTHER TERMS:** _____
_____
_____
_____

**7.**   **ALLOCATION OF COSTS**

   **A.**   **INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed, in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

   **(1)** ☐ Buyer ☐ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____
      prepared by _____

   **(2)** ☐ Buyer ☐ Seller shall pay for the following Report _____
      prepared by _____

   **(3)** ☐ Buyer ☐ Seller shall pay for the following Report _____
      prepared by _____

   **B.**   **GOVERNMENT REQUIREMENTS AND RETROFIT:**

   **(1)** ☐ Buyer ☐ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

Buyer's Initials ( _____ )( _____ )                              Seller's Initials ( _____ )( _____ )

**CPA REVISED 12/15 (PAGE 2 OF 11)**

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 2 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          15805 EDNA PL.

DocuSign Envelope ID: F3F5FFF85-98F4-451B-9193-094C1C4BE684

Property Address: **15805-15859 EDNA PLACE, IRWINDALE, 91706**                                   Date: **April 20, 2018**

(2) (i) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.
(ii) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.
(iii) Buyer shall be provided, within the time specified in paragraph 18A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**
(1) (a) ☒ Buyer ☐ Seller shall pay escrow fee **NEWHALL ESCROW- STEVE CORN.**
(b) Escrow Holder shall be _____
(c) The Parties shall, within 5 (or _____ ) Days After receipt, sign and return Escrow Holder's general provisions.
(2) (a) ☒ Buyer ☐ Seller shall pay for owner's title insurance policy specified in paragraph 17E _____
(b) Owner's title policy to be issued by **WFG TITLE- DENISE CROMWEL** _____
(Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**
(1) ☒ Buyer ☐ Seller shall pay County transfer tax or fee _____
(2) ☒ Buyer ☐ Seller shall pay City transfer tax or fee _____
(3) ☐ Buyer ☐ Seller shall pay Owners' Association ("OA") transfer fee _____
(4) Seller shall pay OA fees for preparing all documents required to be delivered by Civil Code §4525.
(5) ☐ Seller shall pay OA fees for preparing all documents other than those required by Civil Code §4525.
(6) Buyer to pay for any HOA certification fee.
(7) ☐ Buyer ☐ Seller shall pay for any private transfer fee _____
(8) ☐ Buyer ☐ Seller shall pay for _____
(9) ☐ Buyer ☐ Seller shall pay for _____

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B, C or D.
**B. ITEMS INCLUDED IN SALE:**
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms.
(3) A complete inventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be delivered to Buyer within the time specified in paragraph 18A.
(4) Seller represents that all items included in the purchase price are, unless otherwise specified or identified pursuant to 8B(7), owned by Seller. Within the time specified in paragraph 18A, Seller shall give Buyer a list of fixtures not owned by Seller.
(5) Seller shall deliver title to the personal property by Bill of Sale, free and clear of all liens and encumbrances, and without seller warranty of condition regardless of value.
(6) As additional security for any note in favor of Seller for any part of the purchase price, Buyer shall execute a UCC-1 Financing Statement to be filed with the Secretary of State, covering the personal property included in the purchase, replacement thereof, and insurance proceeds.
(7) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 18A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 18B and C.
**C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: _____
_____

**D. OTHER ITEMS:**
(1) Existing integrated phone and automation systems, including necessary components such as intranet and internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.

**9. CLOSING AND POSSESSION:**
**A. Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) ☐ at 6 PM or ( **12:00** ☐ AM/☒ PM) on the date of Close Of Escrow; (ii) ☐ no later than ____ calendar days After Close Of Escrow; or (iii) ☐ at ____ ☐ AM/☐ PM on _____
**B. Seller Remaining in Possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form CL; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.
**C. Tenant Occupied Units:** Possession and occupancy, subject to the rights of tenants under existing leases, shall be delivered to Buyer on Close Of Escrow.
**D.** At Close Of Escrow: (i) Seller assigns to Buyer any assignable warranty rights for items included in the sale; and (ii) Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

Buyer's Initials ( _____ ) ( _____ )                    Seller's Initials ( _____ ) ( _____ )
**CPA REVISED 12/15 (PAGE 3 OF 11)**
**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 3 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        15805 EDNA PL.

Property Address: **15805-15859 EDNA PLACE, IRWINDALE,  91706**                          Date: **April 20, 2018**

**E.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Owners' Association ("OA") to obtain keys to accessible OA facilities.

**10. SECURITY DEPOSITS:** Security deposits, if any, to the extent they have not been applied by Seller in accordance with any rental agreement and current Law, shall be transferred to Buyer on Close Of Escrow. Seller shall notify each tenant, in compliance with the Civil Code.

**11. SELLER DISCLOSURES:**
**A. NATURAL AND ENVIRONMENTAL DISCLOSURES:** Seller shall, within the time specified in paragraph 18, if required by Law: (i) Deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide an NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

**B. ADDITIONAL DISCLOSURES:** Within the time specified in paragraph 18, Seller shall Deliver to Buyer, in writing, the following disclosures, documentation and information:
**(1) RENTAL SERVICE AGREEMENTS:** (i) All current leases, rental agreements, service contracts, and other agreements pertaining to the operation of the Property; and (ii) a rental statement including names of tenants, rental rates, period of rental, date of last rent increase, security deposits, rental concessions, rebates, or other benefits, if any, and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any concession, rebate, or other benefit, except as set forth in these documents.
**(2) INCOME AND EXPENSE STATEMENTS:** The books and records, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business, and used by Seller in the computation of federal and state income tax returns.
**(3) ☒ TENANT ESTOPPEL CERTIFICATES:** (If checked) Tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: (i) that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); (ii) that no lessor defaults exist; and (iii) stating the amount of any prepaid rent or security deposit.
**(4) SURVEYS, PLANS AND ENGINEERING DOCUMENTS:** Copies of surveys, plans, specifications and engineering documents, if any, in Seller's possession or control.
**(5) PERMITS:** If in Seller's possession, Copies of all permits and approvals concerning the Property, obtained from any governmental entity, including, but not limited to, certificates of occupancy, conditional use permits, development plans, and licenses and permits pertaining to the operation of the Property.
**(6) STRUCTURAL MODIFICATIONS:** Any known structural additions or alterations to, or the installation, alteration, repair or replacement of, significant components of the structure(s) upon the Property.
**(7) GOVERNMENTAL COMPLIANCE:** Any improvements, additions, alterations or repairs made by Seller, or known to Seller to have been made, without required governmental permits, final inspections, and approvals.
**(8) VIOLATION NOTICES:** Any notice of violations of any Law filed or issued against the Property and actually known to Seller.
**(9) MISCELLANEOUS ITEMS:** Any of the following, if actually known to Seller: (i) any current pending lawsuit(s), investigation(s), inquiry(ies), action(s), or other proceeding(s) affecting the Property, or the right to use and occupy it; (ii) any unsatisfied mechanic's or materialman's lien(s) affecting the Property; and (iii) that any tenant of the Property is the subject of a bankruptcy.
**C. WITHHOLDING TAXES:** Within the time specified in paragraph 18A, to avoid required withholding Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law, (C.A.R. Form AS or QS).
**D. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov/. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.
**E. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
**(1) SELLER HAS: 7 (or ___) Days** After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision.
**(2)** If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ___) Days** After Acceptance to request from the OA (C.A.R. Form HOA1): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the OA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of OA minutes for regular and special meetings; and (v) the names and contact information of all OAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the OA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 18B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to OA or management company to pay for any of the above.

Buyer's Initials (  ) ( _____ )            Seller's Initials (  ) ( _____ )
**CPA REVISED 12/15 (PAGE 4 OF 11)**
**COMMERCIAL PROPERTY PURCHASE AGREEMENT  (CPA PAGE 4 OF 11)**

Property Address: **15805-15859 EDNA PLACE, IRWINDALE, 91706** _____ Date: **April 20, 2018**

12. ☐ **ENVIRONMENTAL SURVEY** (If checked): Within ___ **Days** After Acceptance, Buyer shall be provided a phase one environmental survey report paid for and obtained by ☐ Buyer ☐ Seller. Buyer shall then, as specified in paragraph 18, remove this contingency or cancel this Agreement.

13. **SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly Deliver a subsequent or amended disclosure or notice in writing, covering those items. However, a subsequent or amended **disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.**

14. **CHANGES DURING ESCROW:**
   A. Prior to Close Of Escrow, Seller may only engage in the following acts, ("Proposed Changes"), subject to Buyer's rights in paragraph 14B: (i) rent or lease any vacant unit or other part of the premises; (ii) alter, modify, or extend any existing rental or lease agreement; (iii) enter into, alter, modify or extend any service contract(s); or (iv) change the status of the condition of the Property.
   B. (1) 7 (or ___ ) Days prior to any Proposed Changes, Seller shall Deliver written notice to Buyer of any Proposed Changes.
      (2) Within 5 (or ___ ) Days After receipt of such notice, Buyer, in writing, may give Seller notice of Buyer's objection to the Proposed Changes in which case Seller shall not make the Proposed Changes.

15. **CONDITION OF PROPERTY:** Unless otherwise agreed in writing: (i) the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.
   A. Seller shall, within the time specified in paragraph 18A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
   B. Buyer has the right to conduct Buyer Investigations of the property and, as specified in paragraph 18B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
   C. **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

16. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
   A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 18B. Within the time specified in paragraph 18B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; (v) review and seek approval of leases that may need to be assumed by Buyer; and (vi) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations except for minimally invasive testing required to prepare a Pest Control Report; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.
   B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 18B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
   C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
   D. **Buyer indemnity and seller protection for entry upon property:** Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

17. **TITLE AND VESTING:**
   A. Within the time specified in paragraph 18, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 18B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.
   B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
   C. Within the time specified in paragraph 18A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

Buyer's Initials ( __ )( __ )   Seller's Initials ( **BL** )( __ )
CPA REVISED 12/15 (PAGE 5 OF 11)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 5 OF 11)**

DocuSign Envelope ID: F3F5FF85-98F4-451B-9193-094C1C4BE684

Property Address: **15805-15859 EDNA PLACE, IRWINDALE,  91706**                                          Date: **April 20, 2018**

**D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**E.** Buyer shall receive a standard coverage owners CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and shall pay any increase in cost.

**18. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

**A. SELLER HAS: 7 (or ___ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5A, 6, 7, 8B(7), 11A, B, C, D and E, 12, 15A and 17A. Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement if Seller has not Delivered the items within the time specified.

**B. (1) BUYER HAS: 17 (or ___ ) Days** After Acceptance, unless otherwise agreed in writing, to:
  **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(7) and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property.
  **(2)** Within the time specified in paragraph 18B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.
  **(3)** By the end of the time specified in paragraph 18B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 18A, then Buyer has 5 (or ___ ) Days After Delivery of any such items, or the time specified in paragraph 18B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.
  **(4)** Continuation of Contingency: Even after the end of the time specified in paragraph 18B(1) and before Seller cancels, if at all, pursuant to paragraph 18C, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 18C(1).

**C. SELLER RIGHT TO CANCEL:**
  **(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.
  **(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a letter as required by paragraph 3J(1); (iii) Deliver verification as required by paragraph 3C or 3H or if Seller reasonably disapproves of the verification provided by paragraph 3C or 3H; or (iv) In writing assume or accept leases or liens specified in 8B(7); (v) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 25B; or (vi) Provide evidence of authority to sign in a representative capacity as specified in paragraph 23. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

**D. NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least 2 (or ___ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 18.

**E. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

**F. CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 (or ___ ) Days After Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days Prior to the scheduled close of escrow.

**G. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within **10 Days** After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials ( _____ )( _____ )                                    Seller's Initials ( _BL_ )( _____ )

Property Address: **15805-15859 EDNA PLACE, IRWINDALE, 91706**                    Date: **April 20, 2018**

**19. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**20. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or ___ ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 15; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**21. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, QA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**22. BROKERS:**
   **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
   **B. BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Property, including, but not limited to, inquiries, introductions, consultations and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify, defend, and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representations in this paragraph.
   **C. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**23. REPRESENTATIVE CAPACITY:** If one or more Parties is signing the Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 40 or 41 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on the Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days After Acceptance**, evidence of authority to act in that capacity (such as, but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**24. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   **A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10, 11D, 17, 18G, 21, 22A, 23, 24, 30, 38, 39, 41, 42 and paragraph D of the section titled Real Estate Brokers on page 11. If a Copy of the separate compensation agreement(s) provided for in paragraph 22A, or paragraph D of the section titled Real Estate Brokers on page 11 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or ___ ) Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 11 or elsewhere in this Agreement.

Buyer's Initials ( ___ )( ___ )                    Seller's Initials ( ___ )( ___ )
CPA REVISED 12/15 (PAGE 7 OF 11)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 7 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com         15805 EDNA PL.

DocuSign Envelope ID: F3F5FF85-98F4-451B-9193-094C7D4BE684

Property Address: **15805-15859 EDNA PLACE, IRWINDALE,  91706**                                    Date: **April 20, 2018**

**B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days After** Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

**C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 22A and paragraph D of the section titled Real Estate Brokers on page 11. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 22A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**D.** Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

**E.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3** Days after mutual execution of the amendment.

**25. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

**A.** Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

**B.** **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).

Buyer's Initials _____ / _____          Seller's Initials _____ / _____

**26. DISPUTE RESOLUTION:**

**A.** **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Consumer Mediation Center (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any dispute or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 26C.

**B.** **ARBITRATION OF DISPUTES:** The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of transactional real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 26C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials _____ / _____          Seller's Initials _____ / _____

Buyer's Initials ( _____ )( _____ )          Seller's Initials ( _____ )( _____ )
CPA REVISED 12/15 (PAGE 8 OF 11)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 8 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          15805 EDNA PL.

Property Address: **15805-15859 EDNA PLACE, IRWINDALE,  91706**          Date: **April 20, 2018**

C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:
(1) EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.
(2) PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.
(3) BROKERS: Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.
27. SELECTION OF SERVICE PROVIDERS: Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.
28. MULTIPLE LISTING SERVICE/PROPERTY DATA SYSTEM: If Broker is a participant of a Multiple Listing Service ("MLS") or Property Data System ("PDS"), Broker is authorized to report to the MLS or PDS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS or PDS.
29. ATTORNEY FEES: In any action, proceeding or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorneys fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 26A.
30. ASSIGNMENT: Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller (C.A.R. Form AOAA).
31. SUCCESSORS AND ASSIGNS: This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.
32. ENVIRONMENTAL HAZARD CONSULTATION: Buyer and Seller acknowledge: (i) Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; (ii) Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; (iii) Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and (iv) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.
33. AMERICANS WITH DISABILITIES ACT: The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer's or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.
34. COPIES: Seller and Buyer each represent that Copies of all reports, documents, certificates approvals and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.
35. EQUAL HOUSING OPPORTUNITY: The Property is sold in compliance with federal, state and local anti-discrimination Laws.
36. GOVERNING LAW: This Agreement shall be governed by the Laws of the state of California.
37. TERMS AND CONDITIONS OF OFFER: This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.
38. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES: Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.
39. DEFINITIONS: As used in this Agreement:
A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
B. "Agreement" means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

Buyer's Initials ( ____ )( ____ )          Seller's Initials ( _BL_ )( ____ )
CPA REVISED 12/15 (PAGE 9 OF 11)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT  (CPA PAGE 9 OF 11)**

DocuSign Envelope ID: F3F5FFF85-98F4-451B-9193-094C1C4BE684

Property Address: **15805-15859 EDNA PLACE, IRWINDALE, 91706**      Date: **April 20, 2018**

C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.

D. **"Close Of Escrow" or "COE"** means the date the grant deed, or other evidence of transfer of title, is recorded.

E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.

F. **"Days"** means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

I. **"Deliver", "Delivered" or "Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 11, regardless of the method used (i.e., messenger, mail, email, fax, other).

J. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

**40. AUTHORITY:** Any person or persons signing this Agreement represent(s) that such person has full power and authority to bind that person's principal, and that the designated Buyer and Seller has full authority to enter into and perform this Agreement. Entering into this Agreement, and the completion of the obligations pursuant to this contract, does not violate any Articles of Incorporation, Articles of Organization, By Laws, Operating Agreement, Partnership Agreement or other document governing the activity of either Buyer or Seller.

**41. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by [ ] _____ [ ] AM/ [ ] PM, on _____ (date)).

[ ] One or more Buyers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date **04/20/2018**      BUYER _____

**(Print name) FORBIX VENTURES, LLC** _____

Date **04/20/2018**      BUYER _____

**(Print name) signor Emil Khodorkovsky** _____

[ ] Additional Signature Addendum attached (C.A.R. Form ASA).

**42. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

[ ] (If checked) SELLER'S ACCEPTANCE IS SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED: _____

[ ] One or more Sellers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date **04/18/2018**      SELLER _____

**(Print name) KAI INDUSTRIES** _____

Date _____      SELLER _____

**(Print name)** _____

[ ] Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ ) (Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was
(Initials)      personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
[ ] AM/ [ ] PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

CPA REVISED 12/15 (PAGE 10 OF 11)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 10 OF 11)**

DocuSign Envelope ID: F3F5FF85-98F4-451B-9193-0...

Property Address: _15805-15859 EDNA PLACE, IRWINDALE, 91706_ _____ Date: _April 20, 2018_

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (**Selling Firm**) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) **BRIGHT HOMES REALTY** _____ CalBRE Lic. # _01218326_
By _Christina Ceniza_ ____ **CHRISTINA CENIZA** CalBRE Lic. # _01363328_ ____ Date _04/20/2018_
By _____ CalBRE Lic. # _____ Date _____
Address _35 N RAYMOND AVE_ _____ City _LOS ANGELES_ State _Ca_ Zip _90042_
Telephone _(323)835-5592_ ____ Fax _____ E-mail _chrisceniza@gmail.com_

Real Estate Broker (Listing Firm) **BRIGHT HOMES REALTY** _____ CalBRE Lic. # _01218326_
By _Christina Ceniza_ ____ **CHRISTINA CENIZA** CalBRE Lic. # _01363328_ ____ Date _04/20/2018_
By _____ CalBRE Lic. # _____ Date _____
Address _35 N RAYMOND AVE_ _____ City _LOS ANGELES_ State _CA_ Zip _90042_
Telephone _(626)529-3880_ ____ Fax _(626)765-6108_ ____ E-mail _chrisceniza@gmail.com_

---

**ESCROW HOLDER ACKNOWLEDGMENT:**

Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____ and agrees to act as Escrow Holder subject to paragraph 24 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
Broker or Designee Initials

---

**REJECTION OF OFFER:** ( ____ )( ____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

---

Buyer's Initials ( _____ )( _____ )     Seller's Initials ( _____ )( _____ )

©2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
**REAL ESTATE BUSINESS SERVICES, INC.**
_a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®_
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____
Broker or Designee

**CPA REVISED 12/15 (PAGE 11 OF 11)**

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 11 OF 11)**



# BUYER'S INSPECTION ADVISORY
(C.A.R. Form BIA, Revised 11/14)

Property Address: 15805-15859 EDNA PLACE, IRWINDALE,  91706 _____ ("Property").

**1. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3. YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

  **A. GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

  **B. SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

  **C. WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

  **D. SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

  **E. WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

  **F. ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

  **G. EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

  **H. FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

  **I. BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

  **J. RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

  **K. SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

  **L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.

Buyer _____     Buyer _____
FERRER VENTURES, LLC                      signor Emil Khodorkovsky

© 1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

BIA REVISED 11/14 (PAGE 1 OF 1)

**BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)** 

BRIGHT HOMES REALTY 9465 WILSHIRE BLVD. STE. #300 Beverly Hills, CA 90212   Phone: (626)705-8887   Fax: (626)785-0940   15805 EDNA PL.
Christian Ceniza                            Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: F3F5FF85-98F4-451B-9193-094C1C4BE684



# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, 11/14)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: **(a)** Broker, without the prior written consent of the Buyer, will not disclose to seller that the Buyer is willing to pay a price greater than the offered price; **(b)** Broker, without the prior written consent of the seller, will not disclose to the buyer that seller is willing to sell property at a price less than the listing price; and **(c)** other than as set forth in (a) and (b) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller Disclosure and Consent and agrees to the agency possibilities disclosed.**

Seller _____ **KAI INDUSTRIES** Date **04/20/2018**
Seller _____ Date _____

Buyer _____ **FORBIX VENTURES, LLC** Date **04/20/2018**
Buyer _____ signor Emil Khodorkovsky Date _____

Real Estate Broker (Firm) **BRIGHT HOMES REALTY** CalBRE # **01218326** Date **04/20/2018**
By Christina Ceniza CalBRE Lic # **01363328** Date **04/20/2018**
**CHRISTINA CENIZA**

Real Estate Broker (Firm) **BRIGHT HOMES REALTY** CalBRE Lic # **01218326** Date **04/20/2018**
By Christina Ceniza CalBRE Lic # **01363328** Date **04/20/2018**
**CHRISTINA CENIZA**

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**PRBS 11/14 (PAGE 1 OF 1)**
**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

Reviewed by _____ Date _____

BRIGHT HOMES REALTY 9465 WILSHIRE BLVD. STE. 8300 Beverly Hills, CA 90212          Phone: (626)795-8887      Fax: (626)785-9840      15805 EDNA PL.
Christina Ceniza          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: F3F5FF85-98F4-451B-9193-094C1C4BE684



CALIFORNIA
ASSOCIATION
OF REALTORS®

**COURT CONFIRMATION ADDENDUM**
(C.A.R. Form CCA, 11/12)

This is an addendum to the ☒ California Residential Purchase Agreement, ☐ Counter Offer No. _____, ☐ Other
_____ ("Agreement"), dated _____ **April 20, 2018** _____, on
property known as _____ **15805-15859 EDNA PLACE, IRWINDALE, 91706** _____ ("Property"),
between _____ **FORBIX VENTURES, LLC , signor Emil Khodorkovsky** _____ ("Buyer"),
and _____ **KAI INDUSTRIES** _____ ("Seller").

The Agreement is contingent upon court confirmation on or before _____ **April 30, 2018** _____ (date). If court confirmation is not
obtained by that date, Buyer may cancel the Agreement in writing. Court confirmation may be required in probate, conservatorship,
guardianship, receivership, bankruptcy, divorce or other proceedings. The court may allow open, competitive bidding, resulting in the
Property being sold to the highest bidder. Broker recommends that Buyer appear at the court confirmation hearing. Buyer understands
that (i) Broker and others may continue to market the Property; and (ii) Broker may represent other competitive bidders prior to and at
the court confirmation.

By signing below Buyer and Seller acknowledge that each has read, understands, has received a copy of and agrees to the terms of this
Court Confirmation Addendum.

Date  **04/20/2018** _____        Date  **04/20/2018** _____

Buyer _____        Seller _____
     **FORBIX VENTURES, LLC**                                 **KAI INDUSTRIES**

Buyer _____        Seller _____
     **signor Emil Khodorkovsky**

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other
means, including facsimile or computerized formats. Copyright © 2012, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR
ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark
which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____



**CCA 11/12 (PAGE 1 OF 1)**

**COURT CONFIRMATION ADDENDUM (CCA PAGE 1 OF 1)**

EQUAL HOUSING
OPPORTUNITY

DocuSign Envelope ID: F3F5FF85-98F4-451B-9193-094C1C4BE684



CALIFORNIA
ASSOCIATION
OF REALTORS®

### ADDENDUM
**(C.A.R. Form ADM, Revised 12/15)**

**No. _1_**

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____

dated _____**April 20, 2018**_____ , on property known as _____**15805-15859 EDNA PLACE**_____ ,
_____**IRWINDALE, 91706**_____

in which _____**FORBIX VENTURES, LLC , signor Emil Khodorkovsky**_____ is referred to as ("Buyer/Tenant")

and _____**KAI INDUSTRIES**_____ is referred to as ("Seller/Landlord").

*1) Forbix Ventures, LLC is the Buyer and Forbix Capital LLC . is the Lender.  Same Owner. ( EMIL Khodorkovsky)*

*2) No Loan Contingency*

*3) No Appraisal Contingency .*

*4) Closing within 15 DAYS following .*

*5) Newhall Escrow -Steven Corn.*

*6) Net to Seller is $5.3 M .*

*7) The commission will be paid through the purchase price and balance for closing costs.Seller to pay 2 percent commission to buyer's agent Christina Ceniza of Bright Homes Realty.*
*8) Subject to clear title.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _**April 20, 2018**_ _____

Buyer/Tenant _____
**FORBIX VENTURES, LLC**

Buyer/Tenant _____
**signor Emil Khodorkovsky**

Date _**April 20, 2018**_ _____

Seller/Landlord _____
**KAI INDUSTRIES**

Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**ADM REVISED 12/15 (PAGE 1 OF 1)**

### ADDENDUM (ADM PAGE 1 OF 1)

BRIGHT HOMES REALTY 9465 WILSHIRE BLVD. STE. #300 Beverly Hills, CA 90212          Phone: (626)795-8887          Fax: (626)785-8848          15805 EDNA PL.
Christina Ceniza          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM**

(C.A.R. Form ADM, Revised 12/15)

**No.** *1*

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to  rescind), ☐ Other _____,
dated _____ *April 20, 2018* _____ , on property known as _____ *15805-15859 EDNA PLACE* _____
_____ *IRWINDALE, 91706* _____
in which _____ *FORBIX VENTURES, LLC , signor Emil Khodorkovsky* _____ is referred to as ("Buyer/Tenant")
and _____ *KAI INDUSTRIES* _____ is referred to as ("Seller/Landlord").

*Continuation - of Addendum 1*
*No. 5 to 10.*

*5. Paragraph 8.C. – Seller excludes from the sale the personal office equipment*
*and supplies belonging to Seller.*
*6. Paragraph 11.A. – The requirements of this subparagraph are satisfied with*
*Seller providing Buyer with Phase I and Phase II Reports and Natural Hazard*
*Disclosure Report, as provided under Paragraph 7.A.(1), (2) and (3).*
*7. Paragraph 11.B.(2) – Seller will not be providing Buyer with any Income and*
*Expense Statements, or any of Seller's books or records.*
*8. Paragraph 11.B.(3) – Newhall Escrow will generate a Tenant Disclosures Report*
*that will take the place of Tenant Estoppel Certificates, and Seller will provide Buyer*
*with copies of Tenant lease agreements, if any, as provided in Paragraph 11.B.(1).*
*9. Paragraph 11.B.(4) through (8) – Seller is not aware and is not in possession or*
*control of any Surveys, Plans or Engineering Documents; Permits; Structural*
*Modifications; Government Compliance; or Violation Notices, that are not otherwise*
*made a part of the Preliminary Title Report provided to Buyer through Newhall Escrow*
*or found in the public records of the County of Los Angeles or the City of Irwindale.*
*10. Paragraph 15.A. through C. – Condition of Property – Seller is not aware of, and*
*is not in possession, care or control of any documents, concerning any material facts that are not disclosed in the*
*Phase I or Phase II, the Natural Hazard Report or the Tenant Disclosures Report.*

*pages  11-18 please see next addendum.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date *April 26, 2018*

Buyer/Tenant _____
*FORBIX VENTURES, LLC*

Buyer/Tenant _____
*signor Emil Khodorkovsky*

Date *April 26, 2018*

Seller/Landlord _____
*KAI INDUSTRIES*

Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

ADM REVISED 12/15 (PAGE 1 OF 1)

**ADDENDUM (ADM PAGE 1 OF 1)**

BRIGHT HOMES REALTY 9465  WILSHIRE BLVD. STE. #300 Beverly Hills, CA 90212          Phone: (626)795-8837          Fax: (626)795-8849          15805 EDNA PL.
Christina Cezius                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## COURT CONFIRMATION ADDENDUM
(C.A.R. Form CCA, 11/12)

This is an addendum to the ☒ California Residential Purchase Agreement, ☐ Counter Offer No. _____ , ☐ Other
_____ ("Agreement"), dated _**April 20, 2018**_ , on
property known as _____ *15805-15859 EDNA PLACE, IRWINDALE,  91706* _____ ("Property"),
between _____ *FORBIX VENTURES, LLC , signor Emil Khodorkovsky* _____ ("Buyer"),
and _____ *KAI INDUSTRIES* _____ ("Seller").

The Agreement is contingent upon court confirmation on or before _**May 31, 2018**_ (date). If court confirmation is not
obtained by that date, Buyer may cancel the Agreement in writing. Court confirmation may be required in probate, conservatorship,
guardianship, receivership, bankruptcy, divorce or other proceedings. The court may allow open, competitive bidding, resulting in the
Property being sold to the highest bidder. Broker recommends that Buyer appear at the court confirmation hearing. Buyer understands
that (i) Broker and others may continue to market the Property; and (ii) Broker may represent other competitive bidders prior to and at
the court confirmation.

By signing below Buyer and Seller acknowledge that each has read, understands, has received a copy of and agrees to the terms of this
Court Confirmation Addendum.

Date *04/27/2018*                                   Date *04/27/2018*

Buyer _____           Seller _____
*FORBIX VENTURES, LLC*                           *KAI INDUSTRIES*

Buyer _____           Seller _____
*signor Emil Khodorkovsky*

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 2012, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

CCA 11/12 (PAGE 1 OF 1)                   Reviewed by _____ Date _____

**COURT CONFIRMATION ADDENDUM (CCA PAGE 1 OF 1)**



CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM**

(C.A.R. Form ADM, Revised 12/15)

**No. 1**

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to  rescind,) ☐ Other _____

dated ____April 20, 2018____ , on property known as _____15805-15859 EDNA PLACE_____
IRWINDALE, 91706

in which _____FORBIX VENTURES, LLC , signor Emil Khodorkovsky_____ is referred to as ("Buyer/Tenant")
and _____KAI INDUSTRIES_____ is referred to as ("Seller/Landlord").

*1. Paragraph 3 – Financing Terms. This offer is not contingent upon Buyer*
*obtaining financing and at the same time as Buyer deposits $835,000 as a balance of a*
*down payment, Buyer will provide Seller and Escrow with verification that Buyer has the*
*amount of $4,500,000 necessary to Close Escrow within 15 days of the execution of the*
*Agreement.*
*2. Paragraph 5 – Addenda and*
*Advisories: This Addendum (C.A.R. Form ADM),*
*Court Confirmation Addendum (C.A.R. Form CCA) and Buyer's Inspection Advisory*
*(C.A.R. Form BIA)*
*3. Paragraph 7.A. and 7.B. – Inspections, Reports and Certificates and Government*
*Requirements and Retrofit: Buyer is responsible for the costs associated.*
*4. Paragraph 7.C.(1)(a) and (2)(a) – Seller to be responsible for costs of closing,*
*which include the following, as provided by Newhall Escrow, but excludes any*
*delinquent and prorated real property taxes claimed by Los Angeles County Tax*
*Collector through the date of closing:*
*a. Owners Title Policy Premium;*
*b. Lender's Title Policy Premium;*
*c. Recording Fees;*
*d. Sub Escrow Fee;*
*e. Wire Transfer/Messenger Fees;*
*f. Documentary Transfer Tax;*
*g. Fees associated with any mortgage or lien payoff;*
*h. Lender Requested Endorsements to Title Policy;*
*i. Seller and Buyer Escrow Fees (Base Fee, Doc Prep, Demand Processing,*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date __April 26, 2018__

Buyer/Tenant _____
**FORBIX VENTURES, LLC**

Buyer/Tenant _____
**signor Emil Khodorkovsky**

Date __April 26, 2018__

Seller/Landlord _____
**KAI INDUSTRIES**

Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**ADM REVISED 12/15 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

# CALIFORNIA
# ASSOCIATION
# OF REALTORS®

## ADDENDUM
### (C.A.R. Form ADM, Revised 12/15)

**No. _1_**

The following terms and conditions are hereby incorporated in and made a part of the: [X] Purchase Agreement, [ ] Residential Lease
or Month-to-Month Rental Agreement, [ ] Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right
to rescind), [ ] Other _____,
dated _____**April 20, 2018**_____ , on property known as _____**15805-15859 EDNA PLACE**_____
_____**IRWINDALE, 91706**_____ is referred to as ("Buyer/Tenant")
in which _____**FORBIX VENTURES, LLC , signor Emil Khodorkovsky**_____ is referred to as ("Seller/Landlord").
and _____**KAI INDUSTRIES**_____

**Continuation:**

_that are not otherwise disclosed in the Phase I or Phase II, the Natural Hazard Report,_
_or the Tenant Disclosures Report._
_11. Paragraph 18.A. – Newhall Escrow to provide Preliminary Title Report._
_12. Paragraph 18.B.(1) through (4) – Buyer has had an opportunity to perform and_
_has performed its due diligence with respect to the Property, as well as, without_
_limitation, the income and expenses for the Property, the condition of the Property,_
_tenancies of the Property, and is accepting the Property in an "As Is" and "Where Is"_
_condition, such that this Paragraph 18, as a contingency provision, has been satisfied_
_and is released and removed by Buyer._
_13. Paragraph 18.E. – Buyer has removed all contingencies._
_14. Paragraph 18.F and 18.G – Buyer's requirement to close escrow will be the_
_subject of an order of the bankruptcy court authorizing Seller to sell the Property to_
_Buyer and, therefore, these two paragraphs are not applicable and are replaced by an_
_order of the bankruptcy court._
_15. Paragraph 19. – Repairs – This paragraph is not applicable, as the sale of the_
_Property is "As Is" and "Where Is," such that there will be no repairs made to the_
_Property as a condition or contingency to the close of escrow._
_16. Paragraph 22.A. – Compensation – Buyer's agent, BRIGHT HOMES REALTY - CHRISTINA CENIZA is being paid by_
_Seller the amount of 2% of the Purchase Price, the sum of $110,000._
_17. Paragraph 41. – The Buyer of the Property is Forbix Ventures, LLC, a California_
_limited liability company, acting by and through its managing member, Emil_
_Khodorkovsky._

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date **April 26, 2018**_____            Date **April 26, 2018**_____

Buyer/Tenant_____            Seller/Landlord_____
    **FORBIX VENTURES, LLC**                                    **KAI INDUSTRIES**

Buyer/Tenant_____            Seller/Landlord_____
    **signor Emil Khodorkovsky**

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of
this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY
OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify
the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS®
who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

BRIGHT HOMES REALTY 9466 WILSHIRE BLVD. STE. #300 Beverly Hills, CA 90213          Phone: (626)795-8857          Fax: (626)795-0440          15305 EDNA PL.
Christina Ceniza                              Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: F3F5FF85-98F4-451B-9193-094C1C4BE684



## DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(Selling Firm to Buyer)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k) and (m).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.
The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE.)**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _04/20/2018_
                                    FENBIX VENTURES, LLC

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _____ Date _____
                                signor Emil Khodorkovsky

Agent _**BRIGHT HOMES REALTY**_                       BRE Lic. # _01218326_
                Real Estate Broker (Firm)
By _Christina Ceniza_                 BRE Lic. # _01363328_         Date _04/20/2018_
      65A8892D00CB427...
      (Salesperson or Broker-Associate)     **CHRISTINA CENIZA**

**Agency Disclosure Compliance** (Civil Code §2079.14):
    When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
    When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:
                      04/20/2018

Seller/Landlord _____ Date _____       Seller/Landlord _____ Date _____
**KAI INDUSTRIES**

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
ALL RIGHTS RESERVED.



Reviewed by _____ Date _____

**AD REVISED 12/14 (PAGE 1 OF 2)**

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

DocuSign Envelope ID: F3F5FFF85-98F4-451B-9193-094C1C4BE684

## CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: (a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. (b) "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. (c) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. (d) "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. (e) "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. (f) "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. (g) "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. (h) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. (i) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (j) "Offer to purchase" means a written contract executed by a buyer acting through a listing agent that becomes the contract for the sale of the real property upon acceptance by the seller. (k) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (l) "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. (m) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (n) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. (o) "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. (p) "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: (a) The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). (c) Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller and acknowledgement of receipt obtained for the selling agent from the seller by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. (d) The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17** (a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller. (c)  The confirmation required by subdivisions (a) and (b) shall be in the following form.

(DO NOT COMPLETE. SAMPLE ONLY) _____ is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.
(Name of Listing Agent)

(DO NOT COMPLETE. SAMPLE ONLY) _____ is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or
(Name of Selling Agent if not the same as the Listing Agent)                                             ☐ both the buyer and seller.

(d)   The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.
**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.
**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____



**AD REVISED 12/14 (PAGE 2 OF 2)**

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com  15685 EDNA PL.



CALIFORNIA
ASSOCIATION
OF REALTORS®

## SINGLE PARTY COMPENSATION AGREEMENT
### (C.A.R. Form SP, Revised 6/17)

Date Prepared: **April 20, 2018**

**KAI INDUSTRIES** ("Seller") and
**BRIGHT HOMES REALTY** ("Broker")
agree as follows, with regard to the real property in the City of **IRWINDALE**,
County of **LOS ANGELES**, California, described as follows:
**15805-15859 EDNA PLACE** ("Property").

### 1. COMPENSATION TO BROKER:
**Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between the Seller and Broker.**
Seller agrees to pay Broker, irrespective of agency relationships, either ☒ **2.000** percent of the sales price or ☒ **$110,000.00**, as follows:
- **A.** If Seller accepts an offer from **FORBIX VENTURES, LLC , signor Emil Khodorkovsky**, ("Buyer") to purchase or exchange the Property during the period commencing on (date) **04/20/2018** and expiring at 11:59 P.M. on (date) **05/20/2018** ("Compensation Period"), provided Buyer completes the transaction or is prevented from doing so by Seller.
- **B.** Buyer includes any person or entity related to Buyer, or who in any manner acts in Buyer's behalf, including, if Buyer is a corporation or partnership, any person or entity in which Buyer has a legal or beneficial interest, or which has a legal or beneficial interest in the Property.
- **C.** Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow.
- **D.** In event of an exchange, Broker will disclose if Broker is also collecting compensation from additional parties.
- **E.** Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the sale or exchange of Property to Buyer.
- **F.** This Agreement shall remain binding, even if, during Compensation Period, Seller enters into a listing agreement with any broker to sell Property.

### BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) Information about Seller's Property will not be transmitted to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

**AUTHORITY TO ENTER IN MLS AFTER CLOSE OF ESCROW:** Seller gives Broker authority to enter property in MLS after close of escrow to establish comparable sales data or otherwise comply with MLS rules.

Seller's Initials ( ) ( )   Broker's/Agent's Initials ( ) ( )

© 2017, California Association of REALTORS®, Inc.

**SP REVISED 6/17 (PAGE 1 OF 2)**

### SINGLE PARTY COMPENSATION AGREEMENT (SP PAGE 1 OF 2)

Property Address: **15805-15859 EDNA PLACE, IRWINDALE, 91706**                     Date: *April 20, 2018*

**2. AGENCY RELATIONSHIPS:**
  **A.** If the Property includes residential property with one-to-four dwelling units, Broker shall give Seller an agency disclosure form prior to presenting an offer to purchase.
  **B.** (Check one) In the transaction:
    **1.** ☐ Broker will act as agent for Seller exclusively in any resulting transaction.
    **2.** ☒ Broker will act as dual agent representing both Buyer and Seller in any resulting transaction.
    **3.** ☐ Broker will act as agent for Buyer exclusively in any resulting transaction. Seller agrees and understands that all acts of Broker, even those that assist Seller in performing or completing any of Seller's contractual or legal obligations, are intended for the benefit of Buyer exclusively. Seller is advised to seek real estate, legal, tax, insurance, and all other desired assistance from other appropriate professionals.
  **C.** This Agreement does not require Broker to solicit offers on the Property from Buyer, nor does it authorize Broker to solicit offers from any other person or entity.

**3. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state, and local anti-discrimination laws.

**4. APPLICABLE LAWS:** Seller agrees to comply with all applicable federal, state, and local laws and regulations regarding sale of Property.

**5. ATTORNEY FEES:** In any action, proceeding, or arbitration between Seller and Broker regarding the obligation to pay compensation under this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs except as provided in paragraph 6A.

**6. DISPUTE RESOLUTION:**
  **A. MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. **Exclusions from this mediation agreement are specified in paragraph 6C.**
  **B. ADDITIONAL MEDIATION TERMS: The following matters shall be excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation and arbitration provisions.**
  **C. ADVISORY:** If Seller and Broker desire to resolve any disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

**7. OTHER TERMS AND CONDITIONS:** _____

_____

**8. ENTIRE CONTRACT:** All prior discussions, negotiations, and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. This Agreement and any supplement, addendum, or modification, including any photocopy or facsimile, may be executed in counterparts.

☐ REPRESENTATIVE CAPACITY: This Single Party Compensation Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.

Seller _____ **KAI INDUSTRIES** _____ Date *04/20/2018*
Address *15805-15859 EAST PLACE* _____ City *Irwindale* _____ State *CA*   Zip *91706*
Telephone _____ Fax_____ E-Mail _____
Seller _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax_____ E-Mail _____

Real Estate Broker (Firm) *BRIGHT HOMES REALTY* _____ CalBRE Lic. # *01218326*
Address *35 N RAYMOND AVE* _____ City *PASADENA* _____ State *CA*   Zip *91103*
By *Christina Ceniza* _____ Tel.*(626)529-3880* E-mail *chrisceniza@gmail.com* CalBRE Lic.#*01363328* Date *04/20/2018*
  *CHRISTINA CENIZA*
By _____ Tel. _____ E-mail _____ CalBRE Lic.# _____

© 2017, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ |



SP REVISED 6/17 (PAGE 2 OF 2)
**SINGLE PARTY COMPENSATION AGREEMENT (SP PAGE 2 OF 2)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com            15805 EDNA PL.

**EXHIBIT "2"**

# WFG National Title Company
### a Williston Financial Group company

## PRELIMINARY REPORT

**Title Contact Information:**
**WFG National Title Company of California**
**700 N Brand Blvd., Suite 1100**
**Glendale, CA  91203**
**Phone:  (818) 476-4076**
**E-mail:  teamjulie@wfgtitleco.com**

**Title Officer:  Julie Alvarado**

**Newhall Escrow**
**Steve Corn**
**24010 Lyons Avenue**
**Newhall, CA 91321**

**Escrow No: 31977**

**Order No.:  18-170829**

**Property Address:**
**15805-15859 East Edna Place**
**Irwindale, CA 91706**

**APN:  8417-006-047**

In response to the above referenced application for a policy of title insurance, WFG National Title Insurance Company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance of describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien, or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit One attached.  The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.  Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit One.  Copies of the policy forms should be read.  They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit One of this report carefully.  The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.  This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

The form of policy or policies of title insurance contemplated by this report is/are:

**ALTA® Ext Loan Policy (06-17-06)**
**Issued by WFG National Title Insurance Company**

Dated as of: **April 10, 2018 at 7:30 am**

The estate or interest in the land hereinafter described or referred to covered by this Report is:

**A fee as to Parcel(s) A, an easement as to Parcel(s) B**

Title to said estate or interest at the date hereof is vested in:

**KAI Industries LLC, a California Limited Liability Company, subject to Item 12**

view image

The land referred to in this report is situated in the State of California, County of Los Angeles, and is described as follows:

**SEE ATTACHED EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

## EXHIBIT  "A"
## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL A:

THE WESTERLY 541.64 FEET OF PARCEL 28, IN THE CITY OF IRWINDALE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS SHOWN ON RECORD OF SURVEY, FILED IN BOOK 66 PAGE 33 OF RECORD OF SURVEYS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THAT PORTION OF SAID LAND INCLUDED WITHIN THE FOLLOWING DESCRIBED LINES:

BEGINNING AT A POINT IN THE CENTER LINE OF IRWINDALE AVENUE, AS SHOWN ON SAID RECORD OF SURVEY THAT IS DISTANT THEREON NORTH 0 DEGREE 08 MINUTES 45 SECONDS EAST 132.45 FEET FROM THE SOUTHEAST CORNER OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 9, TOWNSHIP 1 SOUTH, RANGE 10 WEST, SAN BERNARDINO BASE AND MERIDIAN; THENCE NORTH 89 DEGREES 51 MINUTES 15 SECONDS WEST 50.00 FEET TO A POINT ON A CURVE CONCAVE NORTHWESTERLY AND HAVING A RADIUS OF 25.00 FEET, A RADIAL LINE FROM SAID LAST MENTIONED POINT BEARS NORTH 89 DEGREES 51 MINUTES 15 SECONDS WEST, THENCE SOUTHERLY, SOUTHWESTERLY AND WESTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 91 DEGREES 05 MINUTES 10 SECONDS AN ARC DISTANCE OF 37.74 FEET TO A POINT FROM WHICH A RADIAL LINE BEARS NORTH 1 DEGREE 13 MINUTES 55 SECONDS EAST, THENCE SOUTH 1 DEGREE 13 MINUTES 55 SECONDS WEST 3.00 FEET TO A LINE THAT IS PARALLEL WITH AND DISTANT NORTHERLY 70.00 FEET, MEASURED AT RIGHT ANGLES, FROM THE SOUTHERLY LINE OF SAID PARCEL 28; THENCE ALONG SAID PARALLEL LINE NORTH 86 DEGREES 46 MINUTES 05 SECONDS WEST 658.70 FEET TO THE WESTERLY LINE OF SAID PARCEL 28; THENCE ALONG SAID WESTERLY LINE SOUTH 0 DEGREE 09 MINUTES 01 SECOND WEST 70.00 FEET TO THE SOUTHERLY LINE OF SAID PARCEL 28; THENCE ALONG SAID SOUTHERLY LINE AND ITS EASTERLY PROLONGATION SOUTH 88 DEGREES 46 MINUTES 05 SECOND EAST TO SAID CENTER LINE OF IRWINDALE AVENUE; THENCE ALONG SAID CENTER LINE, NORTH 0 DEGREE 08 MINUTES 45 SECONDS EAST 99.44 FEET TO THE POINT OF BEGINNING.

PARCEL B:

AN EASEMENT FOR RIGHT OF WAY, ROAD AND UTILITY PURPOSES, AS GRANTED TO S.V. HUNSAKER & SONS, A CORPORATION, BY DEED RECORDED SEPTEMBER 23, 1960 IN BOOK D984 PAGE 277, OFFICIAL RECORDS, OVER THAT PORTION OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 9. TOWNSHIP 1 SOUTH RANGE 10 WEST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT OF SAID LAND FILED IN THE DISTRICT LAND OFFICE ON APRIL 21, 1877, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE CENTER LINE OF IRWINDALE AVENUE, AS SAID CENTER LINE IS SHOWN ON A MAP FILED IN BOOK 66 PAGE 33 OF RECORD OF SURVEYS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DISTANT NORTH 0 DEGREE 08 MINUTES 45 SECONDS EAST THEREON 132.45 FEET FROM THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER, THENCE NORTH 89 DEGREES 51 MINUTES 15 SECONDS WEST 50.00 FEET, TO A POINT ON A CURVE CONCAVE NORTHWESTERLY AND HAVING A RADIUS OF 25.00 FEET; A RADIAL LINE FROM SAID LAST MENTIONED POINT BEARS NORTH 89 DEGREES 51 MINUTES 15 SECONDS WEST, THENCE SOUTHERLY, SOUTHWESTERLY AND WESTERLY ALONG SAID CURVE, THROUGH A CENTRAL ANGLE OF 91 DEGREES 05 MINUTES 10 SECONDS AN ARC DISTANCE OF 39.74 FEET TO A POINT FROM WHICH A RADIAL LINE BEARS NORTH 1 DEGREE 13 MINUTES 55 SECONDS EAST; THENCE SOUTH 1 DEGREE 13 MINUTES 55 SECONDS WEST 3.00 FEET TO A LINE THAT IS PARALLEL WITH AND DISTANT NORTHERLY 70.00 FEET, MEASURED AT RIGHT ANGLES, FROM THE SOUTHERLY LINE OF PARCEL 28 AS SHOWN ON SAID MAP FILED IN BOOK 66 PAGE 33 OF RECORD OF SURVEYS, THENCE WESTERLY ALONG SAID PARALLEL LINE NORTH 88 DEGREES 46 MINUTES 05 SECONDS WE4T 658.70 FEET TO THE WESTERLY LINE OF SAID PARCEL 28; THENCE SOUTHERLY ALONG SAID WESTERLY LINE SOUTH

Order No.: 18-170829

0 DEGREE 09 MINUTES 01 SECOND WEST 70.01 FEET TO SAID SOUTHERLY LINE; THENCE EASTERLY ALONG SAID SOUTHERLY LINE AND THE EASTERLY PROLONGATION THEREOF TO PAID CENTER LINE OF IRWINDALE AVENUE; THENCE NORTHERLY ALONG SAID CENTERLINE NORTH 0 DEGREE 08 MINUTE 45 SECONDS EAST 99.44 FEET TO THE POINT OF BEGINNING.

EXCEPT THEREFROM THAT PORTION LYING EASTERLY OF THE WEST LINE OF IRWINDALE AVENUE, AS DESCRIBED IN THE DEED TO THE COUNTY OF LOS ANGELES, RECORDED MARCH 15, 1960 AS INSTRUMENT NO. 4003, IN BOOK D782 PAGE 84, OFFICIAL RECORDS.

SAID PARCEL "B" IS SHOWN AS A PORTION OF PARCEL 28 IN A RECORD OF SURVEY FILED IN BOOK 66 PAGE 33 OF RECORD OF SURVEYS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN:    8417-006-047

**At the date hereof exception to coverage in addition to the printed Exceptions and Exclusions in said policy form would be as follows:**

1a.    General and special taxes and assessments for the fiscal year 2018-2019, a lien not yet due or payable.

1b.    General and County taxes, including any personal property taxes and any assessments collected with taxes, for the fiscal year 2017-2018:

| | |
|---|---|
| 1st Installment: | $14,647.82   Delinquent |
| Penalty: | $1,464.78 |
| 2nd Installment: | $14,647.82   Open |
| Penalty: | $1,474.78, due after April 10, 2018 |
| APN No.: | 8417-006-047 |
| Code Area: | 03126 |

1c.    Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2016-2017 and subsequent years, if any.

| | |
|---|---|
| Parcel No.: | 8417-006-047 |
| Amount: | $17,551.10 |
| By: | April 30, 2018 |
| Amount: | $17,761.41 |
| By: | May 31, 2018 |
| Amount: | $17,971.73 |
| By: | June 30, 2018 |

1d.    The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

1e.    Assessments, for community facility districts, if any, affecting said land which may exist by virtue of assessment maps or notices filed by said districts.

2.    Water rights, claims or title to water, whether or not shown by the public records.

3.    An easement for a cement ditch and pipe line not exceeding 10 feet in width and rights incidental thereto, as set forth in a document recorded in Book 986 Page 239, of Deeds.

    The location of the easement cannot be determined from record information.

4.    An easement for roads, ditches, conduits, or flumes to be used in or about the construction of a certain conduit and works of the San Gabriel Power Company and rights incidental thereto,  as set forth in a document recorded in Book 1241 Page 95 of Deeds.

    The location of the easement cannot be determined from record information.

5.    An easement for electric lines and rights incidental thereto,  as set forth in a document recorded in Book 56112 Page 95, Official Records.

    Reference is hereby made to said document for full particulars.

6.    An easement for public utilities and rights incidental thereto,  as set forth in a document recorded on January 24, 1958 in Book 56427 Page 382, Official Records.

    Reference is hereby made to said document for full particulars.

7.    An easement for public utilities and rights incidental thereto,  as set forth in a document recorded on July 10, 1961 as Instrument No. 2565 in Book D1280 Page 328, Official Records.

Order No.: 18-170829

Reference is hereby made to said document for full particulars.

8.      An easement for gas pipe lines and rights incidental thereto,  as set forth in a document recorded on
        November 5, 1957 in Book 56014 Page 356, Official Records.

        Reference is hereby made to said document for full particulars.

9.      Covenants, conditions, restrictions and easements in the document recorded on September 23, 1960 as
        Instrument No. 1325 in Book D984 Page 280, Official Records.

        Said covenants, conditions and restrictions provide that a violation thereof shall not defeat nor render
        invalid the lien of any mortgage or deed of trust made in good faith and for value.

10.     A deed of trust to secure an indebtedness in the amount shown below, and any other obligations secured
        thereby :

        Amount:                      $3,700,000.00
        Dated:                       October 13, 2013
        Trustor:                     Kai Industries, LLC, a California Limited Liability Company
        Trustee:                     Title 365 Company
        Beneficiary:                 JFL Construction Technology Inc.
        Recorded:                    October 25, 2016
        Instrument No.:              20161313718, of Official Records.

        A Notice of Default:

        Recorded:                    September 28, 2017
        Instrument No.:              20171112323, of Official Records.

        A document providing for an appointment or substitution of trustee:

        Trustee:                     Lender's Foreclosure Services
        Recorded:                    January 12, 2018
        Instrument No.:              20180039595, of Official Records.

        A notice of trustee's sale:

        Recorded:                    January 12, 2018
        Instrument No.:              20180039596, of Official Records.

11.     A deed of trust to secure an indebtedness in the amount shown below, and any other obligations secured
        thereby :

        Amount:                      $600,000.00
        Dated:                       November 25, 2016
        Trustor:                     Kai Industries LLC
        Trustee:                     Juva Investments, LLC
        Beneficiary:                 Juva Investments, LLC
        Recorded:                    December 27, 2016
        Instrument No.:              20161644677, of Official Records.

12.     The requirement we be furnished an affidavit from
        Dominic Glass LLC, a California Limited Liability Company
        to substantiate the deed recorded May 19, 2017 as Instrument No. 20170559983, of Official
        Records wherein Kai Industries LLC, a California Limited Liability Company
        acquired title, along with a current statement of information for consideration prior to our committing
        to issue the insurance requested.
        Said declaration should be notarized by a notary public familiar to this company.

13.    Proceedings pending in the Bankruptcy Court of the District of the U.S. District Court:

Debtor:                          Kai Industries, LLC
Case No. :                       18-11152
Petition Filed:                  February 1, 2018

14.    Rights or claims of parties in possession.

15.    Any rights of the parties in possession of said land, based on an unrecorded lease, or leases.

This Company will require that a full copy of any unrecorded lease be submitted to us, together
with all supplements, assignments and amendments, before issuing any policy of title insurance.

16.    The transaction contemplated in connection with this report is subject to the review and approval of
the Company's Corporate Underwriting Department. The Company reserves the right to add additional
items or make further requirements after such review.


**END OF EXCEPTIONS**

# REQUIREMENTS

Req. No. 1.    Statements of information from all parties to the transaction.

Req. No. 2.    With respect to Dominic Glass LLC, a limited liability company:

    a.  A copy of its operating agreement and any amendments thereto;

    b.  If it is a California limited liability company, that a certified copy of its articles of organization (LLC-1) and any certificate of correction (LLC-11), certificate of amendment (LLC-2), or restatement of articles
of organization (LLC-10) be recorded in the public records;

    c.  If it is a foreign limited liability company, that a certified copy of its application for registration (LLC-5) be recorded in the public records;

    d.  With respect to any deed, deed of trust, lease, subordination agreement or other document or instrument  executed by such limited liability company and presented for recordation by the Company or upon  which the Company is asked to rely, that such document or instrument be executed in accordance with one of the following, as appropriate:

        (i)  If the limited liability company properly operates through officers appointed or elected pursuant to the terms of a written operating agreement, such document must be executed by at least two duly elected or appointed officers, as follows: the chairman of the board, the president  or any vice president, and any secretary, assistant secretary, the chief financial officer or any assistant treasurer;

        (ii) If the limited liability company properly operates through a manager or managers identified in the articles of organization and/or duly elected pursuant to the terms of a written operating agreement, such document must be executed by at least two such managers or by one manager if the limited liability company properly operates with the existence of only one manager.

    e.  Other requirements which the Company may impose following its review of the material required herein and other information which the Company may require.

Req. No. 3.    With respect to Kai Industries LLC, a limited liability company:

    a.  A copy of its operating agreement and any amendments thereto;

    b.  If it is a California limited liability company, that a certified copy of its articles of organization (LLC-1) and any certificate of correction (LLC-11), certificate of amendment (LLC-2), or restatement of articles
of organization (LLC-10) be recorded in the public records;

    c.  If it is a foreign limited liability company, that a certified copy of its application for registration (LLC-5) be recorded in the public records;

    d.  With respect to any deed, deed of trust, lease, subordination agreement or other document or instrument  executed by such limited liability company and presented for recordation by the Company or upon  which the Company is asked to rely, that such document or instrument be executed in accordance with one of the following, as appropriate:

        (i)  If the limited liability company properly operates through officers appointed or elected pursuant to the terms of a written operating agreement, such document must be executed by at least two duly elected or appointed officers, as follows: the chairman of the board, the president  or any vice president, and any secretary, assistant secretary, the chief financial officer or any assistant treasurer;

        (ii) If the limited liability company properly operates through a manager or managers identified in the articles of organization and/or duly elected pursuant to the terms of a written operating agreement, such document must be executed by at least two such managers or by one manager if the limited liability company properly operates with the existence of only one manager.

    e.  Other requirements which the Company may impose following its review of the material required herein and other information which the Company may require.

# NOTES

This report does not reflect requests for notice of default, requests for notice of delinquency, subsequent transfers of easements, and similar matters not germane to the issuance of the policy of title insurance anticipated hereunder.

Note 1:     If this company is requested to disburse funds in connection with this transaction, Chapter 598 of 1989 Mandates of the California Insurance Code requires hold periods for checks deposited to escrow or sub-escrow accounts. Such periods vary depending upon the type of check and anticipated methods of deposit should be discussed with the escrow officer.

Note 2:     No endorsement issued in connection with the policy and relating to covenants, conditions or restrictions provides coverage for environmental protection.

Note 3:     Special recordings: Due to a severe budget shortfall, many county recorders have announced that severe limitations will be placed on the acceptance of "special recordings."

Note 4:     Homeowners association: if the property herein described is subject to membership in a homeowners association, it will become necessary that we be furnished a written statement from the said homeowners association of which said property is a member, which provides that all liens, charges and/or assessments levied on said land have been paid. Said statement should provide clearance up to and including the time of closing. In order to avoid unnecessary delays at the time of closing, we ask that you obtain and forward said statement at your earliest convenience.

Note 5:     Demands: This Company requires that all beneficiary demands be current at the time of closing. If the demand has expired and a current demand cannot be obtained it may be necessary to hold money whether payoff is made based on verbal figures or an expired demand.

Note 6:     Line of credit payoffs: If any deed of trust herein secures a line of credit, we will require that the account be frozen and closed and no additional advances be made to the borrower. If the beneficiary is unwilling to freeze the account, we will require you submit to us all unused checks, debit vouchers, and/or credit cards associated with the loan along with a letter (affidavit) signed by the trustor stating that no additional advances will be made under the credit line. If neither of the above is possible, it will be necessary to hold any difference between the demand balance and the maximum available credit.

Note 7:     Maps: The map attached hereto may or may not be a survey of the land depicted thereon. You should not rely upon it for any purpose other than orientation to the general location of the parcel or parcels depicted. WFG National Title Company of California expressly disclaims any liability for alleged loss or damages which may result from reliance upon this map.

Note 8:     In the event of cancellation or if the transaction has not closed within 90 days from the date hereof, the rate imposed and collectable shall be a minimum of $360.00, pursuant to Section 12404 of the Insurance code, unless other provisions are made.

Note 9:     A Preliminary Change of Ownership Report (PCOR) must be filed with each conveyance in the County Recorder's office for the county where the property is located. If a document evidencing a change in ownership is presented to the Recorder for recordation without the concurrent filing of a PCOR, the Recorder may charge an additional recording fee of twenty dollars ($20). State law also provides for a penalty of be levied if the Change of Ownership Report is not returned to the Assessor within a timely filing period. The penalty for failure to file a Change in Ownership Statement is $100 or 10% of the new tax bill, whichever is greater, but not to exceed $2,500.

Note 10:    As to any and all covenants and restrictions set forth herein, the following is added: "but omitting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, sexual orientation, familial status, disability, handicap, national origin, genetic information, gender, gender identity, gender expression, marital status, source of income (as defined in subdivision (p) of Section 12955), or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code, to the extent such covenants, conditions or restrictions violate Title 42, Section 3604(c), of the United States Codes or Section 12955 of the California Government Code. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status."

Order No.: 18-170829

Note 11:   This report is preparatory to the issuance of an ALTA Loan Policy. We have no knowledge of any fact which would preclude the issuance of the policy with CLTA Endorsement forms 100, 116 or 116.01 and if applicable, 115 and 116.02 attached.

When issued, the CLTA endorsement form 116, 116.01 or 116.02, if applicable will reference **Commercial/Industrial Property**

known as
**15805-15859 East Edna Place, City of Irwindale, County of Los Angeles, California**

Note 12:   The only conveyances affecting said land which recorded within twenty-four (24) months of the date of this report are:

Quit Claim Deed
Grantor(s):                 Dominic Glass LLC, a California Limited Liability Company
Grantee(s):                 Kai Industries, LLLC, a California Limited Liability Company
Dated:                      May 11, 2017
Recorded Date:              May 19, 2017
Recording No:               (instrument) 20170559983, of Official Records

Quit Claim Deed
Grantor(s):                 Kai Industries, LLC, a California Limited Liability Company
Grantee(s):                 Dominic Glass, LLC, a California Limited Liability Company
Dated:                      May 10, 2017
Recorded Date:              May 15, 2017
Recording No:               (instrument) 20150536991, of Official Records

### Exhibit One (Rev. 06-15-14)
### CLTA STANDARD COVERAGE POLICY—1990 (4-8-14)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c) resulting in no loss or damage to the insured claimant;

    (d) attaching or created subsequent to Date of Policy; or

    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

## EXCEPTIONS FROM COVERAGE—SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
## EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.   Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

   (a)   building;

   (b)   zoning;

   (c)   land use;

   (d)   improvements on the Land;

   (e)   land division; and

   (f)   environmental protection.

   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.   The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3.   The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4.   Risks:

   (a)   that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;

   (b)   that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;

   (c)   that result in no loss to You; or

   (d)   that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5.   Failure to pay value for Your Title.

6.   Lack of a right: (a) to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and (b) in streets, alleys, or waterways that touch the Land. This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7.   The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8.   Contamination, explosion, fire, flooding, vibration, fracturing, earthquake or subsidence.

9.   Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

   •   For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible  Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $ 5,000.00 |

## 2006 ALTA LOAN POLICY (06/17/06))
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.   (a)   Any law, ordinance or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to
       (i)   the occupancy, use, or enjoyment of the Land;
       (ii)   the character, dimensions or location of any improvement erected on the Land;
       (iii)   the subdivision of land; or
       (iv)   environmental protection,
       or the effect of any violation of these laws, ordinances or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

(b)    Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.    Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.    Defects, liens, encumbrances, adverse claims or other matters:

(a)    created, suffered, assumed or agreed to by the Insured Claimant;

(b)    not Known to the Company, not recorded in the public records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an insured under this policy;

(c)    resulting in no loss or damage to the Insured Claimant;

(d)    attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11,13, or 14); or

(e)    resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.    Unenforceability of the lien of the Insured Mortgage because of the inability or failure of the Insured to comply with applicable doing-business laws of the state in which the land is situated.

5.    Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

(a)    a fraudulent conveyance or fraudulent transfer, or

(b)    a preferential transfer for any reason not stated in covered Risk 13(b) of this policy..

7.    Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

Except as provided in Schedule B - Part II, this policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

## PART 1

1.    (a)    Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records;

(b)    Proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.    Any facts, rights, interests or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.    Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.    Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.    (a)    Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the Public Records

6.    Any lien or right to a lien for services, labor or material not shown by the Public Records.

## PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:]

## 2006 ALTA OWNER'S POLICY (06/17/06)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.    (a)    Any law, ordinance or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to

(i) the occupancy, use, or enjoyment of the Land;

(ii) the character, dimensions or location of any improvement erected on the Land;

(iii) the subdivision of land; or

(iv) environmental protection;

or the effect of any violation of these laws, ordinances or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

(b)    Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.    Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.    Defects, liens, encumbrances, adverse claims or other matters:

(a)    created, suffered, assumed or agreed to by the Insured Claimant;

Order No.: 18-170829

      b)      not Known to the Company, not recorded in the public records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an insured under this policy;

c)      resulting in no loss or damage to the Insured Claimant;

      (d)      attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

      (e)      resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.      Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

      (a)      a fraudulent conveyance or fraudulent transfer, or

      (b)      a preferential transfer for any reason not stated in covered Risk 9 of this policy..

5.      Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees or expenses which arise by reason of:

1.      (a)      Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records;

      (b)      Proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.      Any facts, rights, interests or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.      Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.      Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.      (a)      Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the Public Records.

6.      Any lien or right to a lien for services, labor or material not shown by the Public Records.

7.      Variable exceptions such as taxes, easements, CC&R's, etc. shown here.

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (12-02-13)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.    (a)    Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
        (i)    the occupancy, use, or enjoyment of the Land;
        (ii)    the character, dimensions, or location of any improvement erected on the Land;
        (iii)    the subdivision of land; or
        (iv)    environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
    (b)    Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2.    Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.    Defects, liens, encumbrances, adverse claims, or other matters
    (a)    created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)    not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)    resulting in no loss or damage to the Insured Claimant;
    (d)    attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
    (e)    resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.    Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.    Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6.    Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7.    Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8.    The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a)    a fraudulent conveyance or fraudulent transfer, or
    (b)    a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10.    Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11.    Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

# STATEMENT OF INFORMATION

**CONFIDENTIAL - TO BE USED ONLY IN CONNECTION WITH ORDER NO: 18-170829, ESCROW NO.:  18-170829AND
PROPERTY ADDRESS:  15805-15859 EAST EDNA PLACE, IRWINDALE, CA  91706**

1.  **IMPROVEMENTS:**     ☐ NONE/VACANT LAND     ☐ SINGLE RESIDENCE     ☐ MULTIPLE RESIDENCE     ☐ COMMERICAL
2.  **OCCUPIED BY:**        ☐ OWNER        ☐ TENANTS
3.  **CONSTRUCTION WITHIN LAST 6 MONTHS?**     ☐ YES            ☐ NO
            IF YES, INDICATE WORK DONE: _____

| PARTY 1 | PARTY 2 |
|---|---|
| FIRST            MIDDLE ☐ NONE      LAST | FIRST            MIDDLE ☐ NONE      LAST |
| FORMER LAST NAME(S), IF ANY | FORMER LAST NAME(S), IF ANY |
| BIRTHPLACE              BIRTH DATE | BIRTHPLACE              BIRTH DATE |
| SOCIAL SECURITY NUMBER      DRIVER'S LICENSE | SOCIAL SECURITY NUMBER      DRIVER'S LICENSE |
| NAME OF FORMER SPOUSE/REGISTERED DOMESTIC PARTNER | NAME OF FORMER SPOUSE/REGISTERED DOMESTIC PARTNER |

## MARRIAGE

☐ SINGLE        ☐ MARRIED        ☐ UNMARRIED        DATE OF MARRIAGE/DIVORCE: _____

### PARTY 1

#### RESIDENCES FOR LAST 10 YEARS

| ADDRESS | CITY | STATE | FROM (DATE) TO (DATE) |
|---|---|---|---|
| ADDRESS | CITY | STATE | FROM (DATE) TO (DATE) |
| ADDRESS | CITY | STATE | FROM (DATE) TO (DATE) |

#### OCCUPATIONS FOR LAST 10 YEARS

| OCCUPATION | FIRM NAME | ADDRESS | NUMBER OF YEARS |
|---|---|---|---|
| OCCUPATION | FIRM NAME | ADDRESS | NUMBER OF YEARS |

### PARTY 2

#### RESIDENCES FOR LAST 10 YEARS

| ADDRESS | CITY | STATE | FROM (DATE) TO (DATE) |
|---|---|---|---|
| ADDRESS | CITY | STATE | FROM (DATE) TO (DATE) |
| ADDRESS | CITY | STATE | FROM (DATE) TO (DATE) |

#### OCCUPATIONS FOR LAST 10 YEARS

| OCCUPATION | FIRM NAME | ADDRESS | NUMBER OF YEARS |
|---|---|---|---|
| OCCUPATION | FIRM NAME | ADDRESS | NUMBER OF YEARS |

**THE UNDERSIGNED DECLARE, UNDER PENALTY OF PERJURY, THAT THE FOREGOING IS TRUE AND CORRECT.**

**EXECUTED ON** _____(DATE), **AT**_____(CITY).

BY _____        BY _____

HOME TELEPHONE: _____        HOME TELEPHONE _____

BUSINESS TELEPHONE _____        BUSINESS TELEPHONE _____

EMAIL_____        EMAIL_____

## Disclosure to Consumer of Available Discounts
## Pursuant to California Code of Regulations Section 2355.3

In compliance with Section 2355.3 of the California Code of Regulations, if the current transaction involves an improved, one-to-four family, residential dwelling, the proposed insured may be entitled to certain cost reductions and/or discounts in their title insurance premiums and/or settlement service charges, pursuant to the programs listed below, and as further described in the Company's current Schedule of Rates and Rules for the State of California, currently on file with the California Department of Insurance.  The reductions and/or discounts available are:

| | |
|---|---|
| Electronic Commerce | Expedited/Electronic Refinance Rates |
| Group Title Discount Program | Lender Special Rates 1, 2, 3 |
| First Time Buyer(s) | Limited Escrow Rates |
| Senior Citizen Rate | Home Equity Escrow Rate |
| U.S. Military Rate | REO Escrow Rate |
| Consumer Direct Rates | Group Rate Escrow Discount |
| Disaster Loans | |

Application of the Reductions and/or Discounts listed above shall be governed by the rules and requirements set forth in the Schedule of Rates and Rules on file in the office of the California Insurance Commissioner.  Multiple programs may or may not be applied.  Pursuant to the above referenced California Code of Regulations Section, neither provision nor acceptance of this form shall constitute a waiver of the consumer's right to be charged the filed rate.

With the receipt of the Preliminary Report to which this Disclosure Form is attached, the proposed insured acknowledges that they have been notified that they may be entitled to certain cost reductions and/or discounts, as listed above and as more particularly described in the Company's Schedule of Rates and Rules, currently on file in the office of the Insurance Commissioner of the State of California.



### ABOUT YOUR PRIVACY

At WFG, we believe it is important to protect the privacy and confidences of our customers.  This notice is intended to explain how we collect, use, and protect any information that we may collect.  It will explain the choices you may make about the use of that information.

**What Information Do We Collect About You?**

We collect certain types of information about you.  This may consist of:

- Your name, address, and telephone number.
- Your email address.
- Your social security or government ID numbers.
- Your financial information.

We collect this information from:

- The application or other forms you fill out with us.
- The correspondence you and others direct to us.
- Our transactions with you.
- Others involved in your transaction, including the real estate agent or lender.

In some cases, we collect information from third parties.  For instance, we may receive real estate information from local assessor's offices.

**How Do We Use This Information?**

We use the information we collect to respond to your requests.  **WE DO NOT SHARE** your information with other companies.

**How Can You "Opt Out?"**

We do not share your information so there is no need to opt out.

**The information We Collect About You On Our Website**

When you enter our website, we automatically collect and store certain information.  This consists of:

- Your IP Address
- (Internet Protocol Address) and domain name.
- The type of browser and operating system you use.
- The time of your visit.
- The pages of our site you visit.

If you register with us or fill out an on online survey, we will collect additional personal information, such as your name, telephone number, email address and mailing address.

**Cookie Usage**

In order to provide you with customized service, we make use of "cookies."  Cookies are essentially files that help us identify your computer and respond to it.  You may disable cookies on your own computer, but you may not be able to download online documents unless cookies are enabled.

**How We Use Information**

The information we collect concerning:

- Your browser
- The time and date of your visit
- The web pages or services you accessed

is used for administrative and technical purposes.  For instance, we may use it to count the number of visitors to our site and determine the most popular pages.  We may also use it to review types of technology you are using, determine which link brought you here, assess how our advertisements on other sites are working, and to help with maintenance.

We use information contained in your emails only for the purpose of responding to those emails. If we ask you to fill out any forms or surveys, we will use the information we receive only for the specific purposes indicated in those forms or surveys.

**Your Right to See and Correct Information**

If you wish to see the information collected about you, please contact your settlement agent.

**Children's Policy**

We do not knowingly collect information from children under the age of 18.  We delete any information that we discover has been provided by children.

**Security**

**--Generally**

We make every effort to protect the integrity of your information.  Any personal information you enter into online forms or surveys will be encrypted to ensure it remains private. We limit the right of access to your information to employees that need to use the information to respond to or process your request or transaction.  We also take industry standard (IPSEC) measures to protect our sites from malicious intrusions or hacking.

**--Phishing and Pretexting**

As you know, consumers are increasingly targeted by unscrupulous persons attempting to acquire sensitive personal or financial information, by impersonating legitimate businesses.  We will never send you an unsolicited email or other communication requesting your private information.  If you receive a communication directing you to enter your personal information, please disregard the instruction and contact us immediately at Compliance@wfgnationaltitle.com.

**Oregon Residents**

We may not disclose personal or privileged information about you unless we provide you with a disclosure authorization form that is executed by you or your representative and otherwise complies with certain statutory requirements.  Any such authorization is not valid for more than 24 months and may be revoked by you at any time, subject to the rights of anyone who relied on the authorization prior to your notice of revocation.

In addition, if your personal or privileged information was collected or received by us in connection with a title insurance transaction, we cannot disclose such information if the disclosure authorization form that you executed is more than one year old or if the requested disclosure is for a purpose other than a purpose expressly permitted by statute.

You have the right at any time to request in writing access to recorded personal information about you that is reasonably described by you and reasonably available to us.  Within 30 days of the date of our receipt of any such written request from you, we will inform you of the nature and substance of any such information, permit you to see and copy that information or obtain a copy by mail, disclose the identity, if recorded, of the persons to whom we have disclosed such information during the previous two years, and provide you with a summary of the procedures by which you may request that such information be corrected, amended or deleted.

**Do Not Track**

Because there is not an industry-standard process or defined criteria to permit a user to opt out of tracking their internet access (Do Not Track or DNT), we do not currently respond to the various DNT signals.

**How to Contact Us**

If you have any questions about our privacy policy, please contact WFG:

- By email: Compliance@wfgnationaltitle.com
- By telephone:  800-385-1590
- By fax: 503-974-9596
- By mail: 12909 SW 68th Pkwy, Suite 350, Portland, OR  97223
- In person:  12909 SW 68th Pkwy, Suite 350, Portland, OR  97223

### WFG FAMILY

WILLISTON FINANCIAL GROUP LLC
WFG NATIONAL TITLE INSURANCE COMPANY
WFG LENDER SERVICES, LLC
WFGLS TITLE AGENCY OF UTAH, LLC
WFG NATIONAL TITLE COMPANY OF WASHINGTON, LLC
WFG NATIONAL TITLE COMPANY OF CALIFORNIA
WFG NATIONAL TITLE COMPANY OF TEXAS, LLC D/B/A WFG NATIONAL TITLE COMPANY
UNIVERSAL TITLE PARTNERS, LLC
VALUTRUST SOLUTIONS, LLC
WILLISTON ENTERPRISE SOLUTIONS & TECHNOLOGY, LLC
WFG NATIONAL TITLE COMPANY OF CLARK COUNTY, WA, LLC D/B/A WFG NATIONAL TITLE



ORDER NO.  18-170829

This affidavit when completed is to be signed and notarized, before returning be sure to complete all the requested information to enable this company to properly process the transaction presently pending.

# AFFIDAVIT

## Re:  DEED LACKING MONETARY CONSIDERATION OR UNINSURED/UNESCROWED

With reference to the deed from _____ as Grantor, to _____ as Grantee, Dated _____ and recorded _____ as Instrument No. _____ of Official Records of _____ County.

The following questions are answered for the purpose of enabling WFG National Title Insurance Company and/or its Underwriter to pass upon the sufficiency of said Deed:

1.    Were the Grantor and Grantee related?  _____
      If so state relationship  _____

2.    Was the deed a true gift deed?  _____
      If not, state reason  _____
      _____

3.    What is the value of the property?  _____

4.    Despite the lack of monetary consideration, was there other adequate consideration given for the deed?
      _____
      If so, please explain briefly how consideration was paid:_____
      _____

5.    Were Federal or State Gift Taxes paid in connection with the above referred to conveyance either by the Grantor or Grantee in the deed?  _____

6.    What was the age of the Grantor at the date of signing the deed?  _____

7.    At the date of signing the deed, what was the Grantor's physical condition?  _____
      _____
      What was the Grantor's mental condition?  _____

8.    Was the deed actually delivered to the Grantee?  _____

9.    Where has the deed been since it was signed?  _____

10.   Who is currently occupying the premises located on said land?  _____

11.   Is the Grantor deceased?  _____
      If the answer is yes, you will be asked to fill out a supplemental questionnaire.

12.   What are the Grantor's current physical and mental conditions?  _____

13.   Did the Grantee have an agreement to act or was he/she acting as a foreclosure consultant?  _____

14.   Was the Grantor facing a foreclosure or serious financial problems (outstanding debt) at the time the deed was signed?  _____

15.   Has the Grantor been provided an option to repurchase the property?  _____

16.  If known, what is the Grantor's current address and telephone number_____
_____

17.  Has the Grantor, to the best of your knowledge, ever filed for bankruptcy, or other debtor relief provisions, under
     the Bankruptcy Laws? _____if so, when?_____ state other facts if
     known_____

18.  If the grantee is taking subject to trust deeds or encumbrances placed on the property by the grantor, explain the
     circumstances for this action_____

**TITLE ORDER NO. 18-170829**                          **APN NO. 8417-006-047**

*Dated*    _____

**Signature** _____

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document. |
| --- |

STATE OF CALIFORNIA
                                              **}**   SS.
COUNTY OF    _____

On _____, before me, _____, a Notary Public, personally appeared
_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and

correct.

**WITNESS** my hand and official seal.

Signature  _____
          Signature of Notary                          (This area for official notarial seal)

WFG National Title Company
a Williston Financial Group company

## COMMERCIAL OWNER'S AFFIDAVIT

Escrow Number:    18-170829

Title Number:

Property:         See Exhibit "A" attached hereto and incorporated herein by this reference

The undersigned affiant first being duly sworn, deposes and says:

1.  That there have been no construction, repairs, alterations, improvements made, ordered or contracted to be made on or to the Property, nor materials ordered within the last 6 months (or 90 days after completion of work) which have not been paid for, nor are there any fixtures attached to the Property which have not been paid for in full; and there are no outstanding or disputed claims for any such work or item, except:

    _____.

    That the work of improvement, if any:

    ☐    Started on _____
    ☐    Was completed on _____
    ☐    Will be completed on _____

2.  That there has been no work done, nor notice received that work is to be done by the municipality (city, borough, or township), or at its direction, including but not limited to the installation of water or sewer lines, or for improvements such as paving or repaving of streets or alleys, or the installation of curbs or sidewalks.

3.  That there are no unrecorded leases or agreements affecting the Property, and there is no one in possession of or that has access to the Property, other than:

    ☐    the undersigned.
    ☐    tenants based on month-to-month rental agreements
    ☐    lessees based on existing leases, copies of which are attached hereto
    ☐    _____

4.  That there are no (i) private charges or assessments against the Property, (ii) rights of prior approval of a future purchaser or occupant of the Property, or (iii) rights of first refusal or options to purchase all or any part of the Property except:

    _____

    _____

    **(enter "none" or N/A if such is true)**

5.  That there are no unpaid real estate taxes or assessments except as shown on the current tax roll. That the undersigned has not received any supplemental tax bill which is unpaid.

6.    That no actions in bankruptcy have been filed by or against the corporation in any federal court or any other court of competent jurisdiction.

7.    That there are no matters pending against the Affiant that could give rise to a lien that would attach to the property between the most recent effective date of the title commitment and the recording of the interest to be insured, and that the Affiant has not and will not execute any instrument that would adversely affect the title or interest to be insured.

8.    That this affidavit is given for the purpose of inducing WFG National Title Insurance Company and/or its agent to issue its policies of title insurance which may provide coverage as to the matters listed above.  The undersigned acknowledge that they have read the foregoing and fully understand the legal aspects of any misrepresentation and/or untrue statements made herein and indemnify and hold harmless WFG NATIONAL TITLE INSURANCE COMPANY against liability occasioned by reason of reliance upon the statements made herein.

Executed this \_\_\_\_\_ day of April, 2018

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on _____at _____.


_____

KAI Industries LLC

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document. |
| --- |

STATE OF CALIFORNIA

                                     ss.

COUNTY OF _____


Subscribed and sworn to (or affirmed) before me on this _____ day of _____, 20\_\_\_\_ by _____, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.


_____

Notary Public Signature



**EXHIBIT "3"**



Max Kolomeyer | Vice President
Senior Private Banker
Private Banking / Westlake Village

5/9/2018

To:  Law Offices of Louis J. Esbin

**Re:    Forbix Company**

Dear Mr. Esbin,

Forbix Company and Emil Khodorkovsky are well-regarded clients, and currently
have availability in excess of $5,500,000.

Should you have any questions, please feel free to contact myself or Amanda
Gottfried, Client Manager at (805) 367-9023.

Sincerely,

Max Kolomeyer
Vice President
Senior Private Banker
(805) 367-9022

---

3027 Townsgate Road, Suite 130, Westlake Village, CA 91361                                      Member FDIC
T: 805.367.9023   F: 805.981.2787   amanda.gottfried@cnb.com



15260 Ventura Blvd. Suite 700, Sherman Oaks, CA 91403

Phone (888) 936-7249 Fax (888) 908-5676

## Loan Commitment Letter

May 9, 2018

Forbix Ventures, LLC
15260 Ventura Boulevard, Suite 980
Sherman Oaks, CA 91403

Re:   Loan Commitment – 15805-15859 Edna Place, Irwindale, CA 91706

Dear Messrs.:

Pursuant to your request, Forbix Capital Corp. is pleased to advise that the request for a loan has been approved subject to the following terms and conditions set forth in this Commitment Letter. This commercial real estate loan is subject to the following terms and conditions:

| | | |
|---|---|---|
| A. | BORROWER: | Forbix Ventures, LLC |
| B. | GUARANTOR: | TBD. |
| C. | TYPE OF CREDIT: | Commercial Real Estate Loan. |
| D. | LOAN AMOUNT: | $4,500,000.00 |
| E. | INTEREST RATE: | 9.0%. |
| F. | REPAYMENT TERM: | 24 months. |
| G. | ORIGINATION FEE: | 4.0% |
| H. | LOAN FEE: (Documentation Inspection, Funding & Legal fees): | $7,500.00 (payable to Forbix Capital) |

I.      COLLATERAL:

(1) 1st Deed of trust at first lien position on the properties located at 15805-15859 Edna Place, Irwindale, CA 91706 subject to condition of Title, title insurance commitment, and equity satisfactory to lender.

(2) Personal Guaranty, Security Agreement, Financing Statement & Environmental Indemnity by (Borrowers).

J.      ESTIMATED PAYMENT:      $33,750 (Interest only)

K.      COMMITMENT FEE:      $45,000.00

L.      PREPAYMENT PENALTY:      None

M.      OTHER COSTS:

Borrowers agrees to pay any other customary closing costs, including, but not limited to, escrow fees, notary fees, recording fees, title insurance premium, and documentary and stamp taxes.

O.      REPAYMENT:

The interest on the principal shall be payable on monthly basis in arrears for the term as described on Page 1, when the principal, any outstanding charges, and any accrued interest shall be due and payable.

P.      TITLE INSURANCE:

Forbix Capital Corp. and or assignee shall be insured as the holder of a First Deed of Trust upon the property under ALTA Lender's Policy of title Insurance, issued by a title company, with liabilities of not less than the principal loan amount.

Q.      ATTORNEYS' FEES:

In the event of any litigation involving the parties to this Agreement to enforce any provisions of this Agreement the prevailing party shall be entitled to recover from the other, such attorney's fees and costs as may be reasonably incurred, including the costs of reasonable investigation, preparation and professional or expert consultation incurred by reason of such litigation. All other attorney's fees and costs relating to this Agreement and the transactions contemplated hereby shall be borne by the party incurring the same.

**SECTION I:      STANDARD CONDITIONS:**

A.      Delivery of fire, hazard insurance and, where applicable, flood coverage, with all-inclusive risk with extended naming Forbix Capital Corp. as loss payee. Policy coverage shall be in an amount not less than the value of all insurable improvements.

B.      Execution (including acknowledgement and notarization) of all legal documents. This includes but is limited to, promissory note, deed of trust, assignment of rents, estoppel agreement, security agreement, financing agreement, indemnity agreement, and guarantee of borrower, corporate resolutions and other documents required by Lender.

C.    Recordation of the Deed of Trust, assignment of rents, and any other document necessary to perfect Forbix Capital Corp.'s security interest(s) on the properties of any collateral security.

D.    Proof of that all general and/or specific property taxes and assessments which are currently due and payable have been paid in full or will be discharged through the loan proceeds.

E.    Borrower's signature on any instrument(s) or instructions indicates unconditional approval of same.

F.    The other conditions specified herein.

G.    Personal Financial Statement, copy of Driver's license, copy of Social Security Card of (Guarantor-TBD).

H.    The Terms of the Note and all other conditions set forth in the Security Agreement and all related documents will govern the ultimate loan terms.

I.    Forbix Capital Corp. reserves the right to modify this approval or to declare this commitment null and void if any representations made in the application are incorrect or incomplete of if there is any  adverse change in the value or the financial condition of the property securing the loan and or any material adverse change in the credit or the financial condition of Borrower, any general partner of Borrower (if Borrower is a partnership) or its controlling shareholder (if Borrower) is a corporation), or any Key Principal has occurred between respective dates of the financial statements which were furnished to Forbix Capital Corp. relating to such entities or persons and the date hereof.

J.    This loan is made pursuant to licensure as a Real Estate Broker issued by the California Department of Real Estate.

K.    Governing Law: This Commitment shall be construed and governed by the laws of the state where the Property is located.


**SECTION II:    TERMINATION OF COMMITMENT:**


The commitment set forth herein shall terminate upon:

A.    May 17, 2018 if the fees called for herein are not paid by that date.

B.    Failure of the borrower to comply with any provision of this commitment.

C.    Damage to property that will not or cannot be restored to the satisfaction of Lender.

D.    Condemnation or any other act of a governmental body which prohibits or limits the use of the property.

E.    Borrower's failure to pay debts or inability to pay debts as they become due, or any act by borrower which seeks reorganization, bankruptcy, or insolvency relief of debts.

F.    Any adverse change subsequent to making this commitment, determined by Forbix Capital Corp. to be material or substantial, in the assets, net worth, or credit of any person who shall become obligated to Forbix Capital Corp..

G.    Any fees, charges, and closing costs paid by the borrower to Lender, including but not limited, loan fees, documents fees, processing fees, and inspections fees shall be retained by Lender and /or Forbix Capital Corp. and shall be non-refundable. Once the loan is funded, it must be closed and recorded within 72 hours (3 days), otherwise the funds will be withdrawn from escrow and this Agreement becomes null and void.

The undersigned borrower(s) / guarantor(s) hereby acknowledge, by the signing of this document, that they have read and have understood pages 1 through 3 of the Loan Commitment, and unconditionally accept and approve all items contained herein.

**Additionally, borrower(s) / guarantor(s) hereby pledge and agree to provide Forbix Capital Corp., at borrower(s)' / guarantor(s) sole expense, all required items, and to cooperate fully to close the loan promptly. The borrower(s) / guarantor(s) are to execute the Loan Commitment and tender, as a non-refundable commitment fee, the sum of $45,000.00 by May 17, 2018. These funds will be applied to the cost of the loan. The commitment shall expire Wednesday, May 23, 2018 at 5:00 P.M. Any or all previous commitments are null and void.**

**Lender:**                                        **Borrowers:**

Forbix Capital Corp.
                                                   Forbix Ventures, LLC
By: _____

Emil Khodorkovsky
President                                          Emil Khodorkovsky
                                                   _____
                                                   By:

Date: May _____10_____, 2018                       Date: May _____10_____, 2018

| In re Kai Industries, LLC,<br><br>Debtor(s) | CHAPTER 11<br>Bankr. Case No.: 2:18-BK-11152-SK |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Law Offices of Louis J. Esbin
25129 The Old Road, Suite 114, Stevenson Ranch, CA 91381-2273

A true and correct copy of the foregoing document described **NOTICE OF MOTION AND MOTION FOR (1) AN ORDER AUTHORIZING DEBTOR IN POSSESSION TO SELL SUBSTANTIALLY ALL OF THE REAL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS (INCLUDING SUCCESSOR LIABILITY CLAIMS), WITH LIENS TO ATTACH TO PROCEEDS; (2) A FINDING THAT THE BUYER IS A GOOD FAITH PURCHASER PURSUANT TO 11 U.S.C. §363(m); (3) A WAIVER OF BANKRUPTCY RULE 6004(h); (4) OVERBID PROCEDURE; (5) AN ORDER THAT ESCROW HOLD EXCESS PROCEEDS FROM SALE PENDING FURTHER COURT ORDER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF BRAD LIN AND EMIL KHODORKOVSKY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On May 10, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Louis J. Esbin (esbinlaw@sbcglobal.net)
Christian T Kim (ckim@dumas-law.com)
James A Dumas, Jr (jdumas@dumas-law.com)

David S. Shevitz (david@shevitzlawfirm.com)
Steven P. Chang (heidi@spclawoffice.com)

Dare Law (dare.law@usdoj.gov)
US Trustee (ustpregion16.la.ecf@usdoj.gov)

❑ Service information continued on attached page

**2. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On May 10, 2018, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Sandra R. Klein, Bankruptcy Judge
Courtroom 1575, 255 E. Temple Street, LA, CA 90012

Kai Industries, LLC, Brad Lin, President
15825 Edna Place. Irwindale, CA 91706

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on May 10, 2018, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

❑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 10, 2018 | LINDA DEKKER | /s/ Linda Dekker |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                 **F 9013-3.1**

**PROOF OF SERVICE LIST**
In re Kai Industries, LLC.
Bankruptcy Case No. 2:18-bk-11152-SK

**2.  Mail Delivery**

**Taxing Authorities (Per Claims Filed)**

Los Angeles County Tax Collector
Att: Oscar Estrada, Tax Specialist
P.O Box 54110
Los Angeles, CA 90054-0010

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Franchise Tax Board
Att: Anthony Franklin
Bankruptcy Section MS A340
PO Box 2952
Sacramento, CA  95812-2952

Internal Revenue Service
Att: Leonard Brown, Specialist
Insolvency Group 1
300 North Los Angeles St, M/S 5022
Los Angeles, CA 90012

**Secured Creditors**

JFL Construction Technology, Inc.
1227 W. Valley Blvd., Suite 104
Alhambra, CA 91803

Kevin Korm
c/o Juva Investments
940 E. Badillo Avenue, Unit 114
Covina, CA 91724

**Unsecured Creditors**

**Notice Only**

Sam S. Leslie, Trustee
3435 Wilshire Blvd., Suite 990
Los Angeles, CA 90010

Law Office of J Flores Valdez
c/o J Flores Valdez
430 S. Garfield Avenue, Suite 400
Alhambra, CA 91801

**Parties in Interest**

Sokundara Hov
28830 Cedar Brook Lane
Menefee, CA 92584

Leang Im Var
28830 Cedar Brook Lane
Menefee, CA 92584

Kevin Ung
3412 Twin Ave
Rosemead, CA 91770

Lily Chea
2141 Stanbridge Ave
Long Beach, CA 90815

Dootson Property Management
11629 Clark Street
 Arcadia, CA  91006

Vic and H Services
1405  E Arizona Place
Anaheim. CA  92805

Minzhi Li
815 E Chestnut Ave
San Gabriel, CA  91776

Ketty Choui
815 E Chestnut Ave
San Gabriel, CA  91776